Herbert Nathan and Nancy
PAUL, Respondents,

v.

Bruce and Sherry JACKSON, Appellants.

Nos. WD 49730, 49744.

Missouri Court of Appeals,
Western District.

Sept. 19, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 31, 1995.

Application to Transfer Denied
Dec. 19, 1995.

Before LAURA DENVIR STITH, P.J. and LOWENSTEIN and HANNA, JJ.

LAURA DENVIR STITH, Presiding Judge.

The Pauls and Jacksons own adjoining lots which front on the Lake of the Ozarks. The Pauls brought suit against the Jacksons, alleging that a boat dock constructed by the Jacksons on the lake interfered with the Pauls' property rights and that the dock constituted a private nuisance. The trial court entered judgment in favor of the Pauls. The Jacksons appeal, claiming that the trial court lacked jurisdiction due to preemption and that the Pauls failed to show that the Jacksons' actions impaired any substantial property rights of the Pauls. We affirm the trial court's holding that preemption does not apply and that the Jacksons' dock was a nuisance because it violated the Pauls' property rights.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The Jacksons and the Pauls own adjoining lots in Miller County, Missouri. The lots front on the Lake of the Ozarks. The Jacksons' property is located in the end of a fairly narrow horseshoe-shaped cove. The Pauls' property is its neighboring property along the lake front to the southwest.

The Lake of the Ozarks is a manmade, privately owned lake. Prior to its formation, the land on which the Pauls' and Jacksons' lots are located was part of a larger parcel of land acquired by Union Electric Land and Development Company (Land Company). Land Company acquired these lots by voluntary conveyance from various property owners rather than by condemnation. Land Company conveyed the portion of this land below the contour elevation of 662 feet to Union Electric Light and Power Company (Union Electric),[1] but retained an easement:

to use the surface of said lands, whether submerged or not, for any and all purposes whatsoever, including the erection and maintenance of improvements thereon, provided such use will in no way interfere with the construction, operation and maintenance by Union Electric Light and Pow-

Lewis Z. Bridges, Lake Ozark, for appellants.

Philip J. Morgan, Camdenton, for respondents.

1. That company is currently known as Union Electric Company.

er Company, its successors or assigns, of the said dam.

Land Company did not convey the portion of the land which was above the 662 feet contour elevation to Union Electric. Rather, it initially retained this upper portion in its own name. Later, it conveyed this upper portion of the land, along with an appurtenant easement for use of the surface of the contiguous land below the 662 feet contour elevation, to various private owners. The subsequent chain of title of one portion of that land eventually led to ownership of the end lot of the cove in question with its appurtenant below-the-lake easement by the Jacksons and of the neighboring lot to the southwest and appurtenant easement by the Pauls.

Union Electric Company has a license under Part I of the Federal Power Act (the Act) from the Federal Energy Regulatory Commission (FERC) to operate Project No. 459 upon the Osage River in Benton, Camden, Miller and Morgan Counties. This project essentially permits Union Electric to operate Bagnell Dam which creates the Lake of the Ozarks. Pursuant to its license, among many other duties, Union Electric reviews applications for and grants or denies boat dock permits for persons owning property adjoining the Lake of the Ozarks.

The authority of Union Electric to regulate boat docks derives from the license issued by FERC on April 9, 1981. All parties to this action acknowledge that Union Electric has the authority under the provisions of the license from FERC to issue or deny boat dock permits on the Lake of the Ozarks.

Various states and authorizing authorities use different methods to determine whether a boat dock should be permitted to be built. One of the key criteria used by Union Electric in reviewing permits is that the dock "needs to be within the applicant's property lines extended lakeward." This rule is intended to avoid the situation in which a dock is moored on what was the landowner's property but extends out into the lake at an angle or to such a length that it goes beyond the owner's easement appurtenant to his or her own property lines extended lakeward and over the easement of his or her neighbor as measured by the neighbor's property lines extended lakeward.

The Pauls originally obtained a dock permit in November, 1982.[2] The Pauls' original permit was for a shared dock with the Pauls' neighbors, Donald and Victoria Thies. Union Electric issued this permit and the Pauls' dock is currently placed in accordance with this permit. In 1984, the Pauls submitted a second dock permit application which was granted by Union Electric in a letter dated July 2, 1984. This dock permit allowed the Pauls to move their dock directly in front of the Pauls' property and to discontinue the joint use of a dock with the Thies. Although the Pauls have never moved their dock to this new location, the permit to do so has never been withdrawn, revoked or terminated.

The Jacksons' first application for a dock permit was dated March 14, 1991. At the time they requested this permit, the Jacksons' property was pie-shaped, with the widest portion of the land away from the shorefront and the narrower tip of land located where the land intersected the shore. In their application, the Jacksons sought to build a boat dock measuring 30 feet by 18 feet with a 25 foot long ramp and containing only one boat slip (one-well). In this original application, the dock began and extended out only in front of the Jacksons' property and within their property lines extended lakeward. It was to be located at a distance of 75 feet from the Pauls' existing dock and did not overlap the Pauls' property lines extended lakeward. A permit for this dock was granted in March, 1991.

The Jacksons submitted a second application for a boat dock in February, 1992. This application was also for a one-well dock with the same dimensions of 30 feet by 18 feet with a 25 foot ramp. However, the proposed distance between the Jacksons' dock and the Pauls' existing dock was reduced to 48 feet. Because of its closer proximity to the Pauls' property, the southwest edge of the proposed dock would overlap the Pauls' property lines extended lakeward and would extend beyond

2. Permits at that time were reviewed by the Department of the Army, Corps of Engineers.

the Jacksons' property lines extended lakeward.

Jeff Douglas, the Union Electric employee who reviews dock permit applications, recalled that he had discussions with the Jacksons with regard to this second permit request. He said he had verbally indicated to them that this application would be denied because the proposed relocation of the dock would be so close to the Pauls' property that it would be located over their property lines as extended into the lake and, conversely, would not be contained within the Jacksons' property lines extended lakeward.

To avoid this problem, the Jacksons conceived the idea of subdividing their property into three separate tracts. The center tract was made into a rectangle shape by including in it all or nearly all of the lakefront property at the point the Jacksons' land intersected the lake and then extending the property lines straight back away from the lake at a perpendicular angle to the lakefront. The remainder of the original single tract became two small triangular tracts of land on either side of the center tract. Those tracts came to a narrow pinpoint at the edge of the cove and were wide at the back. They, in effect, had no lake easement when their lines were extended lakeward. The Jacksons recorded the new subdivision of tracts with the Office of the Recorder of Miller County on April 2, 1992.

The Jacksons then submitted a modification of their second boat dock application, requesting that a boat dock be placed on the center tract only. Because of the perpendicular angle at which the center tract intersected the lake, the amended property lines gave the Jacksons' much more lake when their property lines were extended lakeward. The proposed modification took advantage of these new lines. It requested permission to build a two-well dock that was 30 feet by 32 feet with a 40 foot long ramp and was only 25 feet away from the Pauls' dock. Because of the new perpendicular property lines, the proposed dock was within the Jackson's property lines extended lakeward. It was,

unfortunately, even further within the Pauls' property lines extended lakeward. It effectively closed off useful access to portions of the Pauls' lake area and extended directly over the area in which the Pauls had previously been granted a permit to move their dock. Mr. Jackson admitted that he knew the Pauls were very upset by the proposed location of the dock and that part of the reason for subdividing his property was to create new property lines so as to win approval for this new dock location. Approval for this new dock was granted by Union Electric by letter of May 4, 1992.

The Pauls brought this action against the Jacksons in April, 1992. The Pauls' First Amended Petition for Permanent Injunction and Damages was filed in October, 1992. This Petition alleged that the Jacksons had located a boat dock upon the Lake of the Ozarks which extended in front of the Pauls' property. The Pauls alleged that this "interferes with Plaintiffs' easements and rights and plaintiffs' riparian and littoral rights to their property for use of the Lake of the Ozarks." The Pauls also alleged that the Jacksons' dock constituted a private nuisance to them.[3]

The trial court agreed and entered judgment for the Pauls. In that judgment, the trial court held that Union Electric has the right to regulate boat docks on the Lake of the Ozarks, but that "certain underlying property rights of the parties pursuant to reserved easements are still valid and subject to the authority of this Court." The court then held that the Jacksons' existing dock and any dock located on the Jackson property at a distance less than 48 feet from the closest part of the Pauls' existing dock was not reasonable, interfered with the Pauls' property rights, and constituted a private nuisance. He ordered the Jacksons not to build a dock closer than 48 feet from the Pauls' dock and ordered their existing dock moved to a location in compliance with that ruling. This appeal followed.

On appeal, the Jacksons claim that the trial court lacked jurisdiction to enter an

---

3. The petition also included allegations regarding a seawall constructed by the Jacksons. The trial court ruled in the Jacksons' favor regarding

these allegations and the Pauls have not appealed that ruling.

injunction as to the location of their dock because the provisions of the Federal Power Act, 16 U.S.C. §§ 791a–825r (1985), and the license issued by FERC pursuant to the Act preempt the application of Missouri nuisance law as to the location of the boat dock. In addition, the Jacksons claim that the Pauls failed to show that the Jacksons' actions impaired, or in any manner affected, any substantial property rights of the Pauls, a required element of a cause of action in nuisance.

We do not need to reach the issue whether Union Electric could, in the circumstances, preempt local property rights under its license because here Union Electric has clearly not attempted to preempt such rights. To the contrary, Union Electric has specifically recognized that the permit it issued neither created property rights nor authorized the use of the permit to violate the property rights of others. We agree with the trial court that the Jacksons' dock was a nuisance because it violated the Pauls' property rights and affirm its judgment below on all issues.

## II. *STANDARD OF REVIEW*

Review is under the standard established by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

## III. *FEDERAL LAW DID NOT PREEMPT THE TRIAL COURT FROM FINDING THAT THE JACKSONS' BOAT DOCK CONSTITUTED A NUISANCE BECAUSE IT VIOLATED THE PAULS' EASEMENT RIGHTS*

The parties spend a large part of their briefs arguing about whether the Federal Power Act preempts the states from acting in regard to matters which are subject to the Act and, if so, whether this preemption extends so far as to prohibit the courts from enforcing property rights if to do so might interfere with a boat dock permit granted by Union Electric.

■ As this Court recently noted, the preemption doctrine arises as a necessary result of the application of the Supremacy Clause set out in Article VI of the Constitution. *Connelly v. Iolab Corp.*, No. WD 49377, slip op. at 6, —— S.W.2d ——, —— [1995 WL 250794] (Mo.App. May 2, 1995). That section provides:

> that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, cl. 2. State laws that conflict with federal laws and regulations are, therefore, preempted. *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

*Id.* Such preemption extends not only to positive state enactments in the form of statutes, but also to state regulations as well as state common law decisions. *Id.* at 7–9, —— S.W.2d at —— — ——; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

### A. *The Federal Power Act Does Not Expressly Preempt the States from Applying Local Nuisance Law to Resolve Disputes Regarding the Location of the Jacksons' Boat Dock.*

■ There are three types of preemption. The first, express preemption, is found where Congress has made unmistakably clear by statute, or in legislative history, or in regulations promulgated pursuant to statute, that its enactments alone are to regulate a certain area of the law. *See California v. ARC America Corp.*, 490 U.S. 93, 100, 109 S.Ct. 1661, 1664, 104 L.Ed.2d 86 (1989); *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982).

This Court found in *Connelly* that Congress had expressly preempted the law governing interocular lens by stating that "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement ... (1) which is different from, or in addition to, any requirement applicable under this chapter to the device." *Connelly*, slip op. at 7, 10–11, —— S.W.2d at ——, —— — —— (quoting 21 U.S.C. § 360k).

■ The Jacksons, properly, do not claim that the Act expressly preempts the state of Missouri from enforcing its nuisance laws at the Lake of the Ozarks. No provision in the Federal Power Act states that the Act expressly preempts state law governing property rights or state nuisance laws or that no state may establish laws different from or in addition to those of the Act. Thus, express preemption is inapplicable.

### B. *The Federal Power Act Does Not So Occupy the Field as to Impliedly Preempt the States from Applying Local Nuisance Law to Resolve Disputes Regarding the Location of the Jacksons' Dock.*

■ The second type of preemption recognized by the courts is a form of implied preemption. It is found where Congress has legislatively occupied an entire field of law, thereby implying that additional or contrary state regulation is impermissible. *White v. Medical Review Consultants, Inc.,* 831 S.W.2d 662, 664 (Mo.App.1992). As we noted in *Connelly,* a court will not search for implied preemption where a federal statute includes an express but limited preemption provision. *Connelly,* slip op. at 7, —— S.W.2d at ——.

Moreover, where, as here, it is alleged that preemption applies in an area, such as property rights and nuisance laws, which has been "traditionally occupied by the states, a preemption review starts with the assumption that the historic police powers of the states were not to be preempted unless that was the clear and manifest purpose of Congress." *White,* 831 S.W.2d at 664.

■ In enacting the Federal Power Act, Congress has not clearly indicated an intent to occupy the field of local regulation of property rights on land abutting or under federally regulated waterways, such as the Lake of the Ozarks. Rather, as the United States Supreme Court has previously noted in construing the Act, it "leaves to the states their traditional jurisdiction subject to the admittedly superior right of the Federal Government, through Congress, to regulate interstate and foreign commerce." *First Iowa Hydro–Electric Coop. v. Federal Power Comm'n,* 328 U.S. 152, 171, 66 S.Ct. 906, 914,

90 L.Ed. 1143 (1946). As the Supreme Court further noted in *Federal Power Comm'n v. Niagara Mohawk Power Corp.,* 347 U.S. 239, 74 S.Ct. 487, 98 L.Ed. 666 (1954):

> the plan of the Act is one of reasonable regulation of the use of navigable waters, coupled with encouragement of their development as power projects by private parties.
>
> . . . .
>
> The Act treats usufructuary water rights like other property rights. While leaving the way open for the exercise of the federal servitude and of federal rights of purchase or condemnation, there is no purpose expressed to seize, abolish or eliminate water rights without compensation merely by force of the Act itself.

*Id.* at 251–52, 74 S.Ct. at 494–95.

In addition, the Act itself refers to preexisting water rights. Each applicant for a license shall offer satisfactory evidence to the Commission that it:

> has complied with the requirements of the laws of the State or States within which the proposed project is to be located with respect to bed and banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in the business of developing, transmitting, and distributing power, and in any other business necessary to effect the purposes of a license under this chapter.

16 U.S.C. § 802(b) (1985). *See also id.* § 821 ("Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.").

As the Jacksons recognize in their brief, based on these provisions, other courts have refused to find that the Federal Power Act occupies the entire field of regulation of state property rights. *See, e.g., Georgia Power Co. v. Baker,* 830 F.2d 163 (11th Cir.1987). We agree.

### C. *The Federal Power Act Does Not So Occupy the Field as to Impliedly Preempt the States from Applying Local Nuisance Law to Resolve Disputes Regarding the Location of the Jacksons' Dock.*

The third type of preemption recognized by the courts is denominated specific, or "conflict," preemption. It is applied where "compliance with both state law and federal law is impossible because of an actual conflict." *White*, 831 S.W.2d at 664.

■ Like the form of preemption which applies when Congress has clearly indicated its intent to occupy a particular field, conflict preemption is a form of implied preemption. That is, it arises not from the express words of the federal statute or regulation itself, but rather from the fact that enforcement or application of the state law at issue would necessarily conflict with enforcement of the federal law, and hence the state law must be held to be preempted. *See Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 141–42, 83 S.Ct. 1210, 1216–17, 10 L.Ed.2d 248 (1963).

■ Because it is a form of implied preemption, conflict preemption also will not be lightly presumed where, as here, it is alleged that a conflict exists between federal law and an area of law normally reserved to the states—in this case, state property rights and nuisance laws. *See Loulos v. Dick Smith Ford, Inc.*, 882 S.W.2d 149, 150 (Mo. App.1994); *White*, 831 S.W.2d at 664.

■ The Jacksons argue that conflict preemption applies. Their argument is premised on the following points: (1) Union Electric has granted the Jacksons a permit to build the dock in question at the very location where the trial court below enjoined the Jacksons from building their dock; (2) there is no claim that, in issuing a permit to the Jacksons, Union Electric exceeded its authority under the Federal Power Act; (3) there is no claim that Union Electric exceeded its authority under the terms of the license granted it by FERC; and (4) there is no claim that FERC's or Union Electric procedures are themselves defective.

We agree with each of these premises. However, we disagree with the final premise on which the Jacksons' argument rests, i.e., that "a direct conflict exists between what state nuisance law would provide according to the trial court's order and what the administrative decision of Union Electric Company would provide with regard to the placement of this particular boat dock."

If such a direct conflict did exist, we would be faced with a seeming conflict between two constitutional provisions. That is, if Union Electric intended to preempt local property laws with its grant of a boat permit, then we would have to determine whether a federal boat permit issued by a FERC licensee, pursuant to the Federal Power Act, should be treated as if the permit were a federal regulation and be given preemptive effect—an issue the parties have failed to discuss in their briefs. If so, we would then have to resolve the seeming conflict between such preemption and the property rights guaranteed to the Pauls under the Fifth Amendment to the United States Constitution that their property shall not "be taken for public use, without just compensation." The Pauls argue that if Union Electric's mere issuance of a boat permit can take away the Pauls' easement rights to the land under the lake in front of their property and within their property lines extended lakeward, then their property has been taken without just compensation in violation of the latter constitutional provision.

At least one court has refused to interpret the Federal Power Act to give a power company the right to take property in similar circumstances. The Court of Appeals of North Carolina was faced with the issue in *Zagaroli v. Pollock*, 94 N.C.App. 46, 379 S.E.2d 653 (1989), of whether Duke Power Company had the power under the Federal Power Act to grant a marina the exclusive right to use the surface of the portion of a lake which was over the plaintiff's property. In holding that it did not, the court stated:

> the Federal Power Act did not abolish private proprietary rights.... Under the Federal Power Act Duke Power may place limitations on the landowner's use of his property in accordance with federal law.

However, the Federal Power Act does not give Duke Power the authority to grant defendants the right to use plaintiff's property without the assent of the plaintiff. To hold otherwise would in effect authorize the taking of property without just compensation.

*Id.* 379 S.E.2d at 657–58.

We find we do not need to determine whether Union Electric could, if it attempted to do so, effectively abolish the Pauls' property rights in a portion of their easement for the portion of the lake bottom which fronts on and is within their property lines extended lakeward. This is because the seeming conflict between Union Electric's issuance of a boat dock permit to the Jacksons and the trial court's act in enjoining them from locating the dock in the spot indicated in the permit exists only when one views the permit and the trial court's decision in a vacuum. They should instead be viewed in the context of the law noted above—that the Federal Power Act is not intended to displace or preempt state property rights except where necessary to enforcement of the purposes of the Act.

Union Electric, it appears, is well aware of this limitation on its power under the Act and has not attempted to test the parameters of that limitation by granting permits in derogation of local property rights. To the contrary, Union Electric has made clear that its boat permits are not intended to enlarge or negate existing property rights and that how such rights are to be juxtaposed with a boat permit is to be determined by the courts under Missouri law.

More specifically, when the Jacksons received their first boat dock permit in 1991 for a single-slip dock located 75 feet from the edge of the Pauls' dock, that permit was given the number UE–3184–1–C and accompanied by a letter. That letter stated, in relevant part, that Mr. Jackson was authorized to build a boat dock of the description requested. It further stated that:

> The dock must be positioned in such a manner that it will not create undue interference with, or be an obstruction to, navigable waters or interfere with access to adjacent docks or other property. *Dis-*

*putes that may arise from placement of this dock shall be locally or legally resolved* by the permittee, and failure to do so may be cause for modification, suspension or revocation of this permit in accordance with condition "i" contained in the attached Appendix.

Also, your attention is invited to general condition "f" in said Appendix which states in part, that *this permit does not convey any property rights,* either in real estate or material, or any exclusive privileges, *nor does it authorize any injury to property or invasion of rights of other persons.*

(emphasis added).

As is evident from a review of the letter, Union Electric made clear that its boat dock permit did *not* enlarge the Jacksons' property rights, nor negate those of the Pauls, nor authorize the Jacksons to invade or do injury to the property rights of the Pauls. It further specifically states that the Jacksons must resolve any disputes on these and similar issues in the courts under local law. In other words, the permit simply gives Union Electric's permission to build the boat dock. It does not dispense with the need to comply with relevant local laws governing building of the boat dock, including relevant local nuisance laws governing interference with the property rights of adjacent landowners such as the Pauls.

When Union Electric approved the Jacksons' revised application to move its dock to within 25 feet of the Pauls' dock, the approval letter stated that it was authorizing a modification of the dock under existing permit number UE–3184–1–C and that the modified permit was subject to the same conditions as the original permit. This, of course, included the requirement that the dock comply with local property and nuisance laws.

For the reasons just stated, we do not find that the fact that Jacksons obtained a boat dock permit from Union Electric creates an irreconcilable conflict with local Missouri law governing the parties' property rights and therefore do not find local nuisance law is preempted. We will therefore proceed to the

remaining question whether the Jacksons' dock in fact did constitute a nuisance.[4]

**D. *The Trial Court Acted Within its Discretion in Deciding That the Jacksons' Dock Was a Nuisance.***

The trial court found that the Jacksons' dock was unauthorized under local law because it constituted a nuisance in that it was built in derogation of the Pauls' easement over the land under the lake fronting on their property. The Jacksons contend that the trial court thereby erred because the easement on which the Pauls rely specifically states that it grants an easement only for uses which do not violate relevant federal or state law. The Jacksons argue that the easement claimed by the Pauls violates federal law because it conflicts with the permit granted to the Jacksons by Union Electric.

As just discussed, however, the Jacksons' boat dock permit was itself issued solely on the condition that the dock would also comply with state law and specifically stated it did not affect local property rights. It therefore could not have the effect of limiting the Pauls' easement. The trial court therefore properly found that, because the Jacksons' dock interfered with the Pauls' property rights under the easement, the Jacksons' dock constituted a nuisance.

In order to remedy the nuisance, the trial court enjoined the Jacksons to move their dock from its current location and ordered them not to place it closer than 48 feet from the Pauls' dock. Neither party has argued on appeal that this is an inappropriate remedy if, as we have held above, the Jacksons' dock did constitute a nuisance. We affirm the judgement of the trial court in all respects.

All concur.

---

**4.** Due to our resolution of this issue, we do not reach the question whether the result reached by the trial court could be affirmed on the basis that the Pauls' earlier-issued permit to build a dock over a portion of the same location as the Jacksons' later-issued permit permitted them to build a dock gave the Pauls priority over the Jacksons to use of that location.