**CITY OF SUNSET HILLS,**
**Plaintiff/Respondent,**

v.

**SOUTHWESTERN BELL MOBILE SYSTEMS, INC., Defendant/Appellant.**

**No. ED 75748.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 21, 1999.

Application for Transfer to Supreme Court Denied March 2, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2000.

Application for Transfer Denied April 25, 2000.

Michael D. O'Keefe, James W. Erwin, St. Louis, for appellant.

Robert E. Jones, St. Louis, for respondent.

WILLIAM H. CRANDALL, Jr., Presiding Judge.

Defendant, Southwestern Bell Mobile Systems, Inc., appeals from the judgment against it, entered in a court-tried case, in an action brought by plaintiff, City of Sunset Hills, for violating an ordinance requiring the payment of a business license fee. We affirm.

Southwestern Bell Mobile Systems, Inc. (hereinafter Southwestern Bell) is a corporation engaged in providing cellular or wireless communication services by transmitting signals between antennae located at fixed sites within a service area and the mobile units used by its customers. The mobile units are commonly known as cellular, mobile, or car phones.

City of Sunset Hills (hereinafter City) is a fourth class city located in St. Louis County, Missouri. In March 1992, City's Board of Aldermen (hereinafter Board) adopted Ordinance 1041. That ordinance provided for the issuance of a conditional use permit for cellular antennae with certain restrictions placed thereon regarding height, fencing, landscaping, advertising, and lighting.

In 1991, Southwestern Bell leased a parcel of property located in City for the purpose of installing cellular antennae. In 1992, Southwestern Bell applied for a conditional use permit to install a "[c]ellular antenna, equipment building and accessory uses" on the leased property. The Board granted a conditional use permit as well as a building permit. Thereafter, an antenna and related equipment were installed and used as part of Southwestern Bell's cellular communications network.

At a special election in August 1996, City voters approved a proposition for a new annual license fee or occupational tax on the "business of maintaining telecommunications antennae." Ordinance 1226 amended an existing ordinance, adding "as a business or occupation the category 'Telecommunications Antennae, receiving no gross receipts ....'" and adding an annual fee of $1,000.00 per antenna. City, however, did not issue a business license to Southwestern Bell because of its failure to pay the business license fee.

City filed a two-count complaint and information, alleging that Southwestern Bell violated City's ordinance by not paying the business license fee of $1,000.00 per antenna for 1997 and 1998. The trial court found that Southwestern Bell was guilty on both counts and ordered Southwestern Bell to pay $1,000.00 for each of the years, plus a fine of $250.00 and a penalty of $200.00 from March 11, 1998 for each year.

In its first point on appeal, Southwestern Bell contends the trial court erred in requiring it to pay the license fee because federal law preempts City's ordi-

nance which violates the Telecommunications Act of 1996, codified at 47 U.S.C. section 151 et seq. .(Supp.1997) (hereinafter FTA).

▮ The Supremacy Clause, U.S. Const. Art. VI, cl. 2., invalidates all state and local laws that "interfere with, or are contrary to," federal law. *Bell Atlantic–Maryland, Inc. v. Prince George's County, Md.,* 49 F.Supp.2d 805, 813 (D.Md.1999). Local laws may be invalidated under the Supremacy Clause in several ways. *Id.* Relevant to this appeal, a local law is nullified to the extent that it actually conflicts with federal law by standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

Congress enacted the FTA in an effort to foster rapid competition in the local telephone service market and to end the monopoly market of local providers. *A T & T Communications of the Southwest, Inc. v. City of Austin, Tex.,* 975 F.Supp. 928, 933–934 (W.D.Tex.1997). Southwestern Bell asserts the ordinance specifically violates 47 U.S.C. sections 253(a) and 332(c)(3)(A) of the FTA. Section 253(a) provides that "[n]o State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Section 332(c)(3)(A) provides, "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services."

In assessing whether City's license fee ordinance violates the FTA, the relevant inquiry is whether the ordinance prohibits or has the effect of prohibiting Southwestern Bell or other telecommunications companies from doing business in City.

In *Bell Atlantic–Maryland,* 49 F.Supp.2d at 815, the challenged law prohibited any telecommunications company from using the county's public rights-of-way without first obtaining a franchise from the county. The process of obtaining a franchise included submitting a lengthy and detailed application form, along with a $5,000.00 application fee. *Id.* The application was then subject to a complex approval process in which the county exercised complete discretion over whether to grant or to deny permission to use the public rights-of-way. *Id.* In determining that the county's telecommunications franchise law violated section 253(a) of the FTA, the court stated, "While each of these requirements, individually, may or may not 'have the effect of prohibiting' Bell Atlantic and other companies from providing telecommunications services in Prince George's County, ... in combination, they create a substantial and unlawful barrier to entry into Prince George's County telecommunications market." *Id.*

The present case is factually distinguishable from *Bell Atlantic–Maryland.* Here, the ordinance at issue required Southwestern Bell to pay an annual license fee of $1,000.00 per antenna. There was no cumbersome application or approval process; and City did not exercise complete discretion over the granting of the business license after the fee was paid. Thus, there was no evidence that the license fee ordinance either prohibited or had the effect of prohibiting Southwestern Bell's entry into City's telecommunications market.

Southwestern Bell cites to other decisions supporting its view that local governments are precluded from regulating telecommunications companies. In *A T & T v. Austin,* 975 F.Supp. at 933, A T & T challenged an Austin ordinance requiring municipal consent before entering the local telephone market. The ordinance imposed several conditions on telecommunications companies entering the market, including a non-refundable $850.00 application fee, quarterly franchise fees for use of the

city's rights-of-way, disclosure of detailed financial and organizational materials, information on state and federal certificates of operating authority and franchises in other Texas municipalities, and continuing disclosure of various types of information. *Id.* at 934–935. The court concluded that under the FTA and the Texas Public Utility Regulatory Act of 1995, TEX.REV.CIV. STAT., art. 1446c–0, section 3.2531 (hereinafter PURA), a city may not regulate a local service provider in a way that is unrelated to the management of and compensation for the provider's use of the city's public rights-of-way. *Id.* at 942–943.

In *A T & T Communications of Southwest, Inc. v. City of Dallas, Tex.*, 8 F.Supp.2d 582, 587 (N.D.Tex.1998), A T & T challenged a Dallas ordinance requiring a telecommunications company to obtain a franchise as a prerequisite to using the city's rights-of-way. The ordinance required A T & T to complete an extensive and detailed 18–page franchise application, to pay a fee equal to four percent of its revenues from any business conducted in Dallas, and to meet other requirements. *Id.* at 585. The court held that Dallas could only condition the granting of a franchise on a telecommunications company's agreement to comply with reasonable regulations of its rights-of-way and fees for use of those rights-of-way. *Id.* at 592–593. The court further concluded that Dallas could not require a comprehensive application and consider such factors as the company's technical and organizational qualifications to offer telecommunication services, because the FTA and PURA both assign that power to the state Public Utility Commission (hereinafter PUC). *Id.* at 593.

■ These cases, however, are not dispositive of the case before us because the decisions determined that the FTA and PURA barred cities from attempting to impose certain requirements on telecommunications companies. The courts in both cases pointed out that in Texas, PURA granted exclusive jurisdiction over

telecommunications companies to PUC; and that section 253 of the FTA did not apply to local authorities, unless the ordinance related to the local authority's management of the public rights-of-way. The Texas decisions are not controlling because Missouri does not have a statute similar to PURA. Thus, Missouri cities may impose requirements on telecommunications companies unless such requirements either prohibit or have the effect of prohibiting entry into a city's telecommunications market.

City's ordinance was not inconsistent with the FTA and the FTA did not preempt City's ordinance. Southwestern Bell's first point is denied.

■ In its second point, Southwestern Bell claims the trial court erred in finding it guilty of failing to pay the license fee because City was not authorized to impose such a fee.

■ A municipality has no power to tax beyond the power conferred upon it either by the state constitution or by the state legislature. Section 71.610, RSMo (1994) limits a city's power to impose a license tax:

> No municipal corporation in this state shall have the power to impose a license tax upon any business, avocation, pursuit or calling, unless such business, avocation, pursuit or calling is specially named as taxable in the charter of such municipal corporation, or unless such power be conferred by statute.

City claims that its power to levy the license fee at issue was conferred by statute. Section 94.270, RSMo (1994) provides in pertinent part: "The mayor and board of alderman shall have power and authority to regulate and to license and to levy and collect a license tax on ... telephone companies...." City claims that Southwestern Bell fell within the statute because it was a telephone company. Southwestern Bell counters that it was not a telephone company but rather it was in the "business of telecommunications antennae" which was not specifically named in section 94.270.

■ We disagree with Southwestern Bell's narrow reading of the phrase "telephone companies" in section 94.270. For an occupation to be "specially named," it is sufficient if it "clearly comes within the definition and meaning of the enumerated subjects or is in fact a genus of one of the named occupations." *Armco Steel v. City of Kansas City, Mo.*, 883 S.W.2d 3, 6 (Mo. banc 1994) (quoting *City of St. Charles v. St. Charles Gas Co.*, 353 Mo. 996, 185 S.W.2d 797, 798 (1945)). Thus, if Southwestern Bell was in the business of "telecommunications antennae" as it claims, Southwestern Bell was taxable as long as its services fell within the specified class of occupations known as telephone companies.

The services Southwestern Bell provided clearly fell within the definition or genus of a telephone company. First, in its brief, Southwestern Bell labeled its business "wireless communications services" which it described as "transmitting radio signals between [its] antennae located at fixed sites throughout its service area and the mobile units—commonly called cell phones, car phones, or mobile phones—used by its customers." Southwestern Bell's own characterization of its services as transmitting signals to "phones" placed its services within a class of telephone companies enumerated in the statute.

Second, Southwestern Bell's assertion that it was not a telephone company is disingenuous in light of the fact that it relied on the FTA to defeat City's license fee ordinance. The decisions relied upon by Southwestern Bell all stated in some fashion that Congress enacted the FTA "in an effort to foster rapid competition in the local telephone service market and to end the monopoly market of local providers." *A T & T v. Austin*, 975 F.Supp. at 933–934; *see also A T & T v. Dallas*, 8 F.Supp.2d at 586 ("Congress sought to foster immediate competition by stripping away many of the legal and economic impediments to entry into the local telephone markets"); *Bell Atlantic–Maryland*, 49 F.Supp.2d at 813 ("Congress passed the FTA in 1996 in order to end the monopolies in local telephone services and to benefit consumers by fostering competition between telephone companies in cities throughout the United States.' "). Thus, these cases indicate that the FTA applied to telephone companies, a class to which Southwestern Bell wished to belong when it invoked the FTA to defeat the ordinance; but from which it now attempts to exclude itself, also in an attempt to defeat the ordinance.

Southwestern Bell fell within the class of "telephone companies" under section 94.270, such that City had the authority to impose a business license fee on it. Southwestern Bell's second point is denied.

In its third point, Southwestern Bell charges error in the trial court's enforcing City's license fee because the ordinance was improperly submitted to and approved by City's voters pursuant to the Hancock Amendment. The Missouri Constitution, as modified by the Hancock Amendment, reads as follows:

> Counties and other political subdivisions are hereby prohibited from levying any tax, license or fees, not authorized by law, charter or self-enforcing provisions of the constitution when this section is adopted ... without the approval of the required majority of the qualified voters of that county or other political subdivision.

Mo. Const. Art. X, section 22.

■ Southwestern Bell first argues that because the wording of the ordinance was not identical to the proposition on the ballot, the ordinance was unconstitutional. The ballot submitted to the voters read, "Shall the annual license or occupational tax on the *business of maintaining telecommunications antennae* be $1000.00 per antenna?" (Emphasis added). The Board amended the relevant ordinance to add as a business or occupation the category of "Telecommunications Antennae, receiving no gross receipts." Southwestern Bell contends the only issue approved by the voters was whether a license fee should be assessed against a business of maintaining

telecommunications antennae, not the issue of whether a license fee should be imposed on the business of telecommunications antennae.

■ Southwestern Bell has cited no authority to support its position that the wording of a proposition submitted to the voters and the wording of an ordinance must be identical for the ordinance to be valid. Article X, section 22 of the Missouri Constitution imposes no such requirement. Here, the proposition apprised the voters that the issue before them was the assessment of a license fee related to telecommunications antennae and the ordinance enacted subsequent to voter approval adequately reflected the mandate of the voters that such a fee be assessed against these antennae. The amendment to the ordinance was sufficiently similar to the proposition approved by the voters.

■ Southwestern Bell's other argument is that the proposition did not receive a two-thirds majority of City voters. Southwestern Bell urges this court to construe the phrase "required majority" in the Hancock Amendment to mean more than a simple majority. It cites to Article X, section 11(c) of the Missouri Constitution which states in relevant part:

> In all municipalities, ... the rates of taxation as herein limited may be increased ... when the rate and purpose of the increase are submitted to a vote and two-thirds of the qualified electors voting thereon shall vote therefor....

■ This claim of error regarding the requirement of a two-thirds majority, however, is deficient. Southwestern Bell first mentioned this allegation of error in a footnote in its initial brief. It neither included this claim of error in the wherein and why section of its point relied on, nor addressed it in the argument portion of its brief. As a result, this claim of error is not before us for our review. *See* Rule 84.04(d). Although Southwestern Bell attempted to discuss this allegation of error

in its reply brief, points and arguments omitted from appellant's initial brief may not be supplied by a reply brief, when the respondent has no chance to reply. *See Knopke v. Knopke,* 837 S.W.2d 907, 923 (Mo.App. W.D.1992). Southwestern Bell's third point is denied.

In its fourth point, Southwestern Bell challenges the trial court's enforcement of the ordinance because it is void on its face and as applied to it. In its fifth point, Southwestern Bell claims the trial court erred in imposing a fine in addition to the penalty set forth in the ordinance. We have reviewed these claims of error and find no error of law. An opinion on these points would have no precedential value. Points four and five are denied pursuant to Rule 84.16(b).

The judgment of the trial court is affirmed.[1]

MARY K. HOFF, Judge and JAMES A. PUDLOWSKI, Senior Judge, concur.

---

**1.** City's motion to strike a portion of Southwestern Bell's reply brief is denied.