**ROBERTSON PROPERTIES, INC., Respondent,**

v.

**In the Matter of the DETACHMENT OF TERRITORY FROM PUBLIC WATER SUPPLY DISTRICT NO. 8 OF CLAY COUNTY, Missouri, Appellant.**

**No. WD 62968.**

Missouri Court of Appeals, Western District.

Jan. 21, 2005.

Jeremiah D. Finnegan, Kansas City, MO, for Appellant.

John W. Roe, Kansas City, MO, for Respondent.

Before ULRICH, P.J., LOWENSTEIN and SMITH, JJ.

OVERVIEW

HAROLD L. LOWENSTEIN, Judge.

This is an appeal from a judgment in an action brought by Robertson Properties (Robertson) under Section 247.031[1] to detach approximately fifty-five acres of land from the defendant Public Water Supply District No. 8 of Clay County, Missouri (District), a non-profit association. This overview is presented since the alignment of the parties and relief sought differs from the cases cited by the parties and the trial court. The typical case involves a public water district filing suit against a defendant municipality that seeks to serve drinking water to consumers in a congruent area. This case is different, in that the area in issue is located within a public water district's domain and has been annexed into a municipality's boundary, and the land is being developed by a plaintiff who wants a city to supply drinking water.

■ Generally, as will be set out *infra*, the purpose of public water supply districts is to provide drinking water to areas in which service would be economically difficult to sustain. Congress set up a mechanism to help finance these districts in the delivery of potable water. In providing financial aid to the states to fulfill this purpose, the United States government has prescribed measures to ensure repayment of these obligations.

Much of the litigation that has resulted from this federal-state cooperation has involved situations where the public water

---

[1]. All statutory references are to RSMo. (2000) unless otherwise stated.

Other portions of the public water district law in Chapter 247 that deal with detachment from a district include Sections 247.160, 247.170, and 247.220.

Section 247.160 covers the procedure where a municipality has annexed part of the district's territory and the district's board *voluntarily* enters into a contract with the municipality to allow the municipality to provide water service and to detach. This section also addresses payment for the use of district property and means by which to insure its bond payments. The circuit court must ultimately approve the district board and municipality's contract in order for detachment to occur.

Section 247.170 applies if the district and city cannot agree on who will supply water to annexed property within the district's territory. In order to detach, a petition may be filed in circuit court by a designated percentage of the registered voters in the district who are also patrons of the district. If the court approves the petition, a special election will be called to vote on the detachment.

Finally, Section 247.220 provides a mechanism by which the inhabitants of an entire district may dissolve the entire district through a popular vote of two-thirds of the voters. Under this section, the detachment must be signed by one-fifth of the voters. The court must also determine dissolution would be in the public interest. *Public Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572 (8th Cir.2003).

supply district, financed in part by federal money, has been formed within a state to serve a remote or unpopulated area. As the area served by the public district grew, communities with a municipal or other water supplier developed and expanded into the district's territory. Consequently, developers, residents, and others who had land in both the district and in the municipality could potentially have two different water suppliers. In instances where the landowner elects to be served by the municipal provider, but the water supply district does not agree to detach the affected area from its territory, Section 247.031 sets out the mechanism for detachment in Missouri.

In this case, the plaintiff Robertson, is a developer of residential real estate. One hundred thirty-four acres of Robertson's land had been annexed by the City of Kearney approximately one year before the filing of this suit. Robertson worked closely with Kearney since beginning the development, and it was assumed that Kearney would supply all the water. Robertson brought suit under the auspices of state law, seeking to detach the fifty-five acres[2] from the District. Robertson's evidence in favor of detachment was to the effect that neither Roberston, nor Kearney, knew that this land was located in the District's territory.

The District answered Robertson's petition by raising the affirmative defense that 7 U.S.C. § 1926[3] protected its territory from competitors. It also counterclaimed for a declaration of law and an injunction protecting its supply area. The trial court ruled in favor of Robertson, denying all relief requested by the District.

The ultimate question now on appeal concerns which entity—Kearney or the District—will supply drinking water to the Overlap Area. However, the answer to this question lies in yet another question: Where a state trial court is presented with a property owner's detachment suit filed under state law, and the public water supply district raises federal law as a defense to the detachment, must the trier of fact first decide the issues prescribed in the federal act, and upon finding the federal act does not apply, then decide if the elements contained in the state detachment action are met? This court finds that it must.

---

2. These fifty-five acres will be referred to as the "Overlap Area."

3. Title 7 U.S.C. Section 1926(a)(1) authorizes the Secretary of Agriculture to:

> make or insure loans to associations, including corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized Indian tribes, and public and quasi-public agencies to provide for the application or agencies to provide for the application or establishment of soil conservation practices, shifts in land use, the conservation, development, use, and control of water, and the installation or improvement of drainage or waste disposal facilities, recreational developments, and essential community facilities including necessary related equipment, all primarily serving farmers, ranchers, farms tenants, farm laborers, rural businesses, and other rural residents, and to furnish financial assistance or other aid in planning projects for such purposes.

Subsection (b) states that:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b) (1994).

### Facts

In 1999, Robertson purchased a tract of undeveloped land and entered into an agreement with the seller, whereby Kearney would annex one hundred thirty-four acres of the land. Robertson began developing its land in phases, with Kearney supplying water. During development, it was discovered that fifty-five acres of the land annexed by Kearney was already within the District's territory. By the time this discovery was made, however, Kearney had already obtained easements and had extended an eighteen-inch and a fourteen-inch water main to service the Overlap Area (Phase IV). Accordingly, Robertson brought suit to detach the Overlap Area from the District.

In entering judgment for Kearney and granting detachment, the trial court made extensive findings that it would be cheaper, more feasible, and less cumbersome for all phases of Robertson's development to be served by Kearney. It found that (1) the District had not supplied water to the subject Overlap Area, (2) did not have sufficient mains to immediately provide service, and (3) that Robertson had requested service from the District in October of 2002, but had not received assurance that it could provide service by May 1, 2003. Additionally, the court found that Kearney could better provide water for fire protection.

The court concluded that because the District had over eight hundred customers in an area of approximately eighteen thousand acres, detachment of the fifty-five acre Overlap Area would neither result in a curtailment of service by the District nor hinder it from repaying its obligation on existing bonds. Although the court did not determine whether the outstanding bonds were "special obligation bonds" within the meaning of Section 247.031, it did conclude that since the District did not have any lines or other facilities in the Overlap Area, consent of the bondholders was not required for detachment.

### Review and Analysis

■ Review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and Rule 73.01. Accordingly, the trial court's judgement will not be overturned "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32.

In this case, the trial court erroneously applied the law by focusing its analysis on Section 247.031. Instead of first engaging in a formal Section 1926 analysis, the trial relied on *Chance v. Public Water Supply District No. 16*, 41 S.W.3d 523, 525 (Mo. App.2001), to conclude that Section 1926 was inapplicable because the detachment was sought by a private individual rather than a municipality. This reliance is misplaced and constitutes a misapplication of law. *Chance* did involve a landowners' suit to detach under Section 247.031 and a contention by the defendant water district that Section 1926 afforded it protection. Beyond those facts, however, any similarity to the facts in *Chance* and the case at bar ceases.

In *Chance*, the landowner owed a ten-acre tract located in an unincorporated area within the water district's boundaries. *Id.* at 524. The tract was later divided into two separate lots. *Id.* Although the City of Independence was already providing water to the lot on which the Chance's house was located, the city refused to provide service to the second lot unless it was detached from the water district. *Id.* Because they wanted Independence to service both lots, the Chances filed a detachment suit against the water district. *Id.*

The trial court ruled in favor of the Chances and detached the property from the water district. *See id.* at 526.

This court affirmed, relying on Section 247.031. *Id.* at 524. Section 247.031(1) provides that "[t]erritory included in a district that is not being served by such district may be detached from such district provided that there are no outstanding general obligation or special obligation bonds." Subsection (4) further requires the circuit court to detach the property in question "if the court finds that the detachment [1] will be in the best interest of the inhabitants and landowners of the territory to be detached and [2] will not adversely affect the remainder of the district." § 247.031(4).

The *Chance* court noted that, under the federal statute, the requirement that a district be indebted to the federal government was not met because the district itself was not the entity that had received a federal loan. 41 S.W.3d at 524–25. It also said that the Section 1926(b) requirement, that service of a district provided or made available shall not be curtailed by inclusion in the district's area of a city boundary (i.e., annexation), was not involved. *Id.* at 525 ("Independence has not annexed the Chance's property[.]").

This case is different in that the property sought to be detached was annexed with the landowner's permission by Kearney in March 1999, well before the filing of the detachment suit. Kearney planned to provide water to one hundred forty-five houses, until later discovering that fifty-five acres of the project were within the District's territory. Although not the *de jure* plaintiff, Kearney had made prior arrangements with the landowner to provide water service. Therefore, it was not an innocent bystander to Robertson's dispute with the District. Despite *Chance's* language that suggests blanket authority be given to municipal water systems supplying water where "service areas" coincide with federally indebted public water districts, this language should not be taken out of context. Specifically, neither *Chance,* nor its interpretation of federal and state law, should be read to allow automatic circumvention of Section 1926(b)'s protection where the municipality seeks to provide water to property it has annexed from within the distributor's boundaries and over the water district's objections.

### COMPARING STATE AND FEDERAL LAW

The error of law here results from the trial court's commingling of the facts and conclusions from its Section 1926 and Section 247.031 analyses, primarily from deciding the state action first. The trial court specifically held that the plaintiff, Robertson, was a private individual, not a municipality. The problem with a "private" plaintiff bringing a Section 247.031 suit is that the Section 1926 defense must first be addressed; application of federal law does not rest on anything other than the provider being a competitor with a district indebted to the United States. Section 1926 is not affected by who brings the underlying suit. In a Section 1926 analysis it makes no difference whether an individual brings the suit for detachment; the end result is the same—a municipal or private water supplier is chosen to provide drinking water.

As stated in the legislative history of, and the many cases interpreting, Section 1926, the primary type of competition Congress envisioned was an expanding municipality that annexes and tries to lure urban customers to buy water from them. *See, e.g., Jennings Water, Inc. v. City of N. Vernon,* 895 F.2d 311, 317 (7th Cir.1989); *Rural Water Dist. No. 3 v. Owasso Util. Auth.,* 530 F.Supp. 818, 824 (N.D.Okla. 1979). This seems to be exactly what hap-

pened here. Having a "private" plaintiff bring a state detachment suit does not negate or trump a district's Section 1926 defense. Only after first determining that one of Section 1926's prongs is inapplicable may the court consider the applicable state detachment statute.

## MUST THE SECTION 1926 DEFENSE BE DECIDED FIRST?

A side-by-side examination of the criteria for detachment from a public water district contained in the federal statute reveals a distinct difference from the Missouri statute, Section 247.031, for detachment by a landowner. As stated earlier, public districts—such as the District here—are funded by government loans provided for by federal law. Section 1926, therefore, takes precedence over state detachment law. There is no issue here of invalidating state law, nor could this court entertain such an examination. What is evident, however, is that the trial court must first determine whether the letter of the federal law and the Congress' purposes and objectives are being followed. The Supremacy Clause, U.S. CONST. art. VI, cl. 2. states that the laws of the United States made in pursuance of the Constitution shall be the supreme law and judges of every state are bound thereby. *Ard v. Jensen,* 996 S.W.2d 594, 596 n. 3 (Mo.App. 1999); *City of Sunset Hills v. Southwestern Bell Mobile Sys., Inc.,* 14 S.W.3d 54, 57 (Mo.App.1999). When, upon examination, state law conflicts with federal law, the state laws are preempted. *Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

Inherent in this examination is the proposition that the trial court should interpret federal law without also considering state law issues. That is not what happened in the instant case. Although state and federal law seem similar, they are not, but nor are they contradictory. Combining federal criteria with state issues, and even matters irrelevant to the federal purpose of supplying drinking water to rural areas, i.e., a District supplying water to fight fires or facilities for sewer collection, simply should not enter into a Section 1926 analysis.[4] If the federal statute applies, there is no need to determine whether state law has been met, for the federal law, via a Section 1926 defense, has preempted a detachment under Section 247.031. *See Paul v. Jackson,* 910 S.W.2d 286, 290 (Mo. App.1995).

Title 7, Section 1926 of the United States Code was enacted as a manifestation of Congress' discretionary powers under the spending clause, U.S. CONST. art. 1, § 8, cl. 1, to provide for the general welfare. *Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2,* 861 F.2d 1211, 1215 (10th Cir.1988). Legislation enacted under the spending clause is like a contract in that when states accept federal money they "agree to comply with federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

The legislative history of Section 1926(b) explains that the main purpose of the federal loans made to water district associations is to supply potable water to farmers and ranchers. S. REP. No. 87–566 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309. The legislative history further states that the words, "other rural residents," were included to indicate the desire to reduce the cost per user in the remaining, more remote areas. *Id.* Congress did not in-

---

4. "[A] water association's capacity to provide fire protection is irrelevant to its entitlement to protection from competition under § 1926(b)." *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow,* 191 F.3d 1192, 1204 n. 10 (10th Cir.1999).

tend, however, to allow expanding municipalities to "skim the cream" by expanding into and annexing land from water associations. *See City of Madison v. Bear Creek Water Ass'n, Inc.,* 816 F.2d 1057, 1060 (5th Cir.1987).

■ The purpose of securing the district's territory from competitive suppliers, such as municipalities, is to protect and encourage rural water developments and to insure repayment of the loans to the federal government. *Sequoyah,* 191 F.3d at 1196 (citing S.REP. No. 87–566 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309). Although the legislation does not specifically state that there cannot be open competition, the history showed the "intent of Congress was to protect rural water districts from 'competitive facilities,' especially those which would be developed as a result of the expansion of neighboring municipalities." *Rural Water Dist. No. 3,* 530 F.Supp. at 824; *see also City of Madison,* 816 F.2d at 1060.

■ Section 1926(b) sets out a congressional mandate that local governments not be allowed to encroach upon, curtail, or limit the drinking water services provided by an association that is indebted to the federal government. *Pub. Water Supply Dist. No. 10,* 345 F.3d at 571; *City of Madison,* 816 F.2d at 1059. Accordingly, the designated area of a water association entitled to Section 1926(b) protection is sacrosanct; any doubts as to protection should be resolved in favor of the association from municipal encroachment. *Rural Water Sys. No. 1 v. City of Sioux Center,* 202 F.3d 1035, 1038 (8th Cir.2000) (citing *Sequoyah,* 191 F.3d at 1197).

■ In order for Section 1926 to apply, a water district association must establish that (1) it has a continuing indebtedness to the FmHA and (2) has provided or made available service to the disputed area. *See Le–Ax Water Dist. v. City of Athens,* 346 F.3d 701, 705 (6th Cir.2003). However, the trial court in this case failed to make a definitive finding whether the District was indebted to the FmHA.[5] Instead, the trial court merely indicated that the second prong—whether the District had "made service available to the disputed area"—had not been satisfied. Because express findings on both prongs are required to determine the applicability of Section 1926, the judgment is reversed and remanded. On remand, the trial court should, without admitting new evidence, determine whether the District was indebted to the FmHA.

■ In addition, the trial court should also revisit its analysis of prong two. Section 1926(b) uses the language "service provided or made available." The statute clearly prohibits a municipal annexation that would "pry" existing customers away from a public water district. Even in instances where service has not yet been provided to an area, an association can still claim Section 1926 protection under this second prong by demonstrating an ability to provide service, in that it has water lines and adequate facilities in or adjacent to the disputed area, within a reasonable time after a request for service has been made. *See, e.g., N. Alamo Water Supply Corp. v. City of San Juan,* 90 F.3d 910, 916 (5th Cir.1996); *Lexington–South Elkhorn Water Dist., v. City of Wilmore,* 93 F.3d 230, 238 (6th Cir.1996). The ability to provide drinking water service can be shown by evidence that there are "pipes in the ground" in or adjacent to the disputed area with which it can serve the disputed customers within a reasonable time after a

5. The court did point to evidence that supported a ruling that the District owed on obligations on its assets and property securing a federal loan as defined under the act.

request for service is made. *Moongate Water Co. v. Butterfield Park Mut. Domestic Water Ass'n,* 291 F.3d 1262, 1267–68 (10th Cir.2002) (citing *Sequoyah,* 191 F.3d at 1203).

It is within this context that a determination must be made whether the District has made service available to future water consumers in Brooke Haven. In making this critical determination, the comparison of what the District offers and what Kearney offers is not the litmus test. Whether it is easier or cheaper for Kearney to provide service is irrelevant.[6] The test is simply whether the District has made available service to this area.

Here, the trial court merely determined that Kearney would be a better provider. It did not address the admitted or uncontested facts that Robertson initially decided to "go with the City," the failure of Robertson/Kearney to determine if there was an encroachment, and Robertson's late request for service, which was made well after Robertson/Kearney had laid mains and connecting pipes into an undeveloped area at the edge of the District's territory. As a result, on remand, the trial court should ultimately determine whether the District was reasonably capable of "providing service" at the request of Robertson.

SUGGESTIONS TO THE TRIAL COURT

■ Although this court would prefer to afford finality to the underlying question of which entity would be the water supplier, that result cannot be reached under the findings and conclusions of the trial court. This court now holds that where Section 1926(a)-(b) is raised as a defense to a Section 247.031 suit for detachment by a landowner involving overlapping territory due to a later municipal annexation, the trial court must make a determination in the following order. First, the trial court must make all necessary findings and conclusions in order to decide whether the federal statute protects the district, i.e., is the District still indebted to the federal government and has the District "made service available"? If the court concludes the federal act protects the district, the inquiry is at an end and no detachment may be had.

■ If the court, however, concludes that the federal statute is inapplicable, it must then consider the evidence and determine that the Overlap Area "is not being served" by the District. If there are general or special obligation bonds or specified debts of the District exceeding $25,000, the creditors' bondholders must consent in writing to the detachment, "except such consent shall not be required for special obligation bonds if the district has no water lines or other facilities located within any of the territory detached." § 247.031(1). Finally, in response to exceptions filed by the District under Section 247.031(4), the court must also find that the detachment (1) will be in the "best interest of the district" and "the inhabitants and landowners of the [Overlap Area] will not be adversely affected," or that (2) the detachments "will be in the best interest of the inhabitants and landowners" in the Overlap Area and "will not adversely affect the remainder of the district." Only after making all of these determinations may the trial court grant the landowners' petition.

If the method set forth above is not followed and the landowner has *already* made arrangements with the water supplier, proceeding with a Section 247.031 examination without making findings regarding the federal law, effectively preempts

---

**6.** Relative cost is determinative only if the district's price is "grossly excessive." *Rural*

*Water Dist. No. 1 v. City of Wilson,* 243 F.3d 1263, 1271 (10th Cir.2001).

the federal statute. This is what happened here; the *de jure* plaintiff is a landowner seeking a determination of who can best supply cheap drinking water, but, in fact, the *de facto* plaintiff is the municipality who has already been chosen as the supplier. This case is apparently an attempt to circumvent the federal statute, which is designed to protect rural water districts that have made the effort to supply water to remote users.

In addition to demonstrating the necessity for a trial court dealing with a Section 247.031 petition to determine of federal law first, this case presents an additional problem neither contemplated by the Missouri detachment statutes nor by *Chance*.

The landowner-plaintiff in the case at bar was not a single owner who planned to utilize the property merely as a residence. To the contrary, Robertson intended to develop and sell one hundred forty-five homes in the Overlap Area. Unlike the plaintiff in *Chance*, however, Robertson worked with Kearney from the very beginning with the sole intention of using Kearney's water. The following evidence, an excerpt from Robertson's consulting engineer's letter of October 1, 2002, to the District is most telling:

> Robertson Properties, Inc. has been caught in the middle of the struggle between the District and the City of Kearney as to who will service the next phases.... This has been going on for nearly one (1) year and the time line has become critical.... The City intends to enforce a sewer connection fee to all City sewer customers that are not water customers. This will impact the project by nearly $400,000.

Notably, Kearney's involvement in the detachment process was not limited to the Robertson property. At trial, the District's president testified that he was aware that another property owner, Mr. Horn, had also filed for detachment and an attorney for Kearney entered an appearance on both landowners' behalf. He also stated that, while he had not confirmed the information, he had heard that Kearney was paying for Mr. Horn's attorney fees.

This evidence, coupled with the documented involvement by Kearney both prior to and during the Robertson suit, presents a perplexing question as to whether this suit should have been brought by Kearney under Section 247.170. The trial court rejected this solution, and this court cannot dispute the judge's action in hindsight. The question remains, however, what course should a trial court take where it becomes obvious the plaintiff is not truly the real party in interest under Section 247.031. Since this case is being reversed on other grounds and being sent back for findings and conclusions in accordance with the opinion, a definitive answer is not being made. Should this situation ever arise again, however, a viable alternative for the trial court would be to find that the municipality is a necessary party and order that the municipality be joined and aligned an additional plaintiff under Rules 52.04 and 52.06.

## SUGGESTIONS TO THE LEGISLATURE

The factual scenario leading up to this lawsuit may very well be repeated, as growing Missouri communities continue to expand into unincorporated and unimproved areas comprising authorized territory of public water supply districts. It is hoped that the supply of drinking water to such newly-planned developments could be negotiated under existing laws with satisfactory results and without the expense, delay and rancor present in the case at bar. When laid side-by-side, Section 1926, and accompanying common law, differs from the requirements of Missouri law, particularly Section 247.031.

This court suggests that the legislature re-examine Section 247.031. It also suggests that a method be forged to create an atmosphere where developers, municipalities, and public supply districts can begin negotiations at an early stage and avoid clandestine arrangements between developers and cities that allow the cities to construct and expand an available supply before a request or announcement of the upcoming plans are made to the public district. By the same token, it is also hoped that such a method will also dissuade the public district from dawdling when it is apparent that another entity is putting water lines in its territory.

Furthermore, the trial court intermingles terms from both statutes in making a determination of their individual applicability. For instance, when it referred to the existence of "general" or "special obligation bonds," it used terms solely contained in Missouri's Section 247.031. In 1926(b) Congress refers only to "loans" as denominated in (a). The result here was the trial court determined the applicability of Section 1926 on the basis of Missouri law. In order to eliminate or alleviate this confusion, the state legislature is invited to re-examine Section 247.031 in light of overlapping areas where a public supply district still has outstanding federal loans.

## Conclusion

Allowing a landowner to bring a detachment suit in cases, such as this, would put form over substance. The situation here is obvious. To now say that Kearney will not benefit from this detachment suit misses the mark. The landowner entered into a pre-purchase agreement that insured Kearney would be the supplier. Robertson and its customers will be the users and, without the overriding protection of the federal law, the District will lose a cluster of desirable customers.

Accordingly, this court must reverse the judgment of the trial court and remand for the sole purpose of first making findings and conclusions as to the applicability of 7 U.S.C. Section 1926 to the underlying petition for detachment. The trial court must reach a finding whether the District can, or has, made service available to the landowner(s) and whether the District has outstanding federal loans. If federal law is found applicable, the trial court shall enter judgment in favor of the District. If, however, the court concludes Section 1926 does not apply and, therefore, offers no defense for the District, it may then proceed to a determination under Section 247.031.

All concur.