**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 14, 2005**

Charles R. Fulbruge III
Clerk

REVISED FEBRUARY 18, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20080

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TYRONE MAPLETOFT WILLIAMS,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:

This federal death penalty case returns to this court for the second time in less than a month. We have jurisdiction under either the collateral order doctrine or, alternatively, in mandamus. We have expedited the consideration of this case to enforce our previous mandamus order that this case should proceed expeditiously to trial. Because the district court has improvised a procedure at odds with the Federal Death Penalty Act, we VACATE the order of the district court that the case proceed to trial with

a non-death-penalty-qualified jury, and re-order that the case proceed promptly to trial.

## BACKGROUND

A detailed explanation of the background of this case is available in our earlier mandamus opinion, In re United States, __ F.3d __, 2005 WL 57696 (5th Cir., Jan. 12, 2005).

Pertinent to the matter now before us, this court granted the government's petition for mandamus only a month ago to prevent the district court from giving an unauthorized jury instruction, harmful to the government, as a sanction for its refusal to comply with the court's also-unauthorized discovery orders. This court vacated the discovery orders and ordered the district court to proceed immediately to trial. Moreover, our order indicated that it should be read to

> include[] using the current [death penalty qualified] jury pool, each member of which has obeyed his civic duty and gone through the laborious process of completing the questionnaires submitted by counsel. If trial is not commenced within thirty days, the Government may seek further mandamus relief to that end.

Id., 2005 WL 57969 * 5 n.8. On January 21, 2005, Williams's petition for panel rehearing and petition for rehearing en banc were denied and the mandate issued.

Back in the district court, however, the case did not proceed to trial. The district court agreed to stay the trial while Williams sought certiorari review in the Supreme Court of the United States. When informed of the delay this would cause, the

2

judge stated that if the government took longer than a week to respond to Williams's certiorari petition, she was "letting the jury go." Hr'g Tr., Jan. 24, 2005, at 49. The judge told the parties that she was presiding over another criminal trial scheduled to begin April 1, 2005, and which was expected to last over four months, and that if that case began first, the parties would need to "get in line." Id. at 52. Concerned about the possibility that the district court would release the 250-person venire pool, and thus violate the explicit order of this court, the government moved to commence jury selection and requested a status conference.

Williams filed a response opposing the government's motion to commence jury selection, in which he reasserted a motion, previously denied, that requested the court to empanel a non-death penalty-qualified jury to hear the guilt/innocence phase of trial. At the status conference on Friday, February 4, 2005, the district court revisited this motion and granted it. In so doing, the district court asserted that "good cause" existed under 18 U.S.C. § 3593(b)(2)(C) (discussed infra) to proceed to trial the following Monday with a non-death penalty-qualified jury. The district court ruled that the "good cause" consisted of "[t]he case management problems that have arisen in this case because of the government's interlocutory appeal of this court's discovery rulings." Status Conf. Tr. at 19.

3

The United States objected to this ruling as inconsistent with the Federal Death Penalty Act. The district court rejected this objection and declined to enter a stay. The United States filed a timely notice of appeal and requested a stay from this court February 4, 2005. We granted that stay on February 5 to review the instant appeal.

**JURISDICTION**

This court has appellate jurisdiction pursuant to the collateral order exception to the final judgment rule or, alternatively, as a matter of mandamus.[1]

"An appealable collateral order is an order that conclusively resolves an issue separate from the merits of the controversy, is effectively unreviewable on appeal from final judgment, and is too important to be denied review." Arnold v. State Farm Fire and Cas. Co., 277 F.3d 772, 776-77 (5th Cir. 2001) (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712, 116 S. Ct. 1712, 1718, 135 L.Ed.2d 1 (1996)). Although use of the collateral order doctrine is ordinarily very limited in criminal cases, interlocutory review may be heard to address "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial." United States v. Bird, 709

---

[1]It is arguable that the court's order is appealable pursuant to 18 U.S.C. § 3731 as, in effect, a "dismissal" of the death eligible portion of the indictment. See U.S. v. Frye, 372 F.3d 729, 733-34 (5th Cir. 2004). We need not reach this possibility, however.

F.2d 388, 391 (5th Cir. 1983) (internal citations omitted). Finality of a district court's collateral order exists when it is "made with the expectation that [it] will be the final word on the subject addressed." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 277 (1988).

The district court's decision to order immediate trial before a non-death penalty-qualified jury satisfies all three requirements of the collateral order doctrine. First, the district court's order conclusively resolved that Williams's guilt would be tried before a non-death penalty-qualified jury. Second, the decision involved a key determination made by the district judge concerning the procedure imposed by the Federal Death Penalty Act. That issue, whether a unitary jury is required unless one of four statutorily described circumstances is present, is unrelated to the merits of the case and is likely to recur. Third, the order is effectively unreviewable at the government's instance on appeal if the defendant is not convicted of capital murder, or, if having been convicted of capital murder, he is not sentenced to death.

In the alternative, mandamus is appropriate. Cf. United States v. Whittaker, 268 F.3d 185, 193 (3d Cir. 2001) ("[W]e point out that if we found that we did not have appellate jurisdiction, we could and would exercise mandamus jurisdiction."). Under the All Writs Act, 28 U.S.C. § 1651, three requirements must exist before a writ of mandamus will issue: "(1) the party seeking issuance of the writ must have no other adequate means to attain

5

the relief he desires; (2) the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable; and (3) even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." In re United States, 2005 WL 57969, at *5 (quoting Cheney v. United States District Court for the District of Columbia, __ U.S. __, 124 S. Ct. 2576, 2587 (2004) (additional citations and quotations omitted)).

Hence, if jurisdiction does not lie under the collateral order doctrine, mandamus jurisdiction would exist. The district court's bifurcated jury order is essentially unreviewable, and based on our analysis of the Federal Death Penalty Act, the Government has a clear and indisputable right to relief. A writ of mandamus is also appropriate given the seriousness of the issue, the trial court's plainly erroneous interpretation of the statute, and the fact that this court specifically invited the Government to seek further mandamus relief in the event the district court failed to comply with our previous order.

## DISCUSSION

### A. Federal Death Penalty Act

The Federal Death Penalty Act, 18 U.S.C. § 3593, establishes explicit procedures for juries in federal capital cases. A bifurcated procedure is used under which the

6

guilt/innocence phase of trial is separated from the sentencing phase. If a jury trial is conducted during the first phase, the sentencing hearing "<u>shall</u> be conducted — before the jury that determined the defendant's guilt." <u>Id.</u> at § 3593(b)(1) (emphasis added). Only in four limited circumstances may a different or new jury be empaneled solely for sentencing: (A) where the defendant pleads guilty; (B) where "the defendant was convicted after a trial before the court sitting without a jury"; (C) where "the jury that determined the defendant's guilt was discharged for good cause"; or (D) where, after initial imposition of the sentence, reconsideration is necessary. <u>Id.</u> at § 3593(b)(2)(A)-(D).

Last October, the district court denied Williams's motion to empanel a non-death-qualified jury for the guilt/innocence phase. Reversing herself on February 4, she invoked subsection (b)(2)(C) and granted that request to balance the government's desire for a speedy trial with Williams's plea to await the outcome of his certiorari petition. The judge invoked "case management problems" as sufficient "good cause" under this provision. In two ways, this determination violated the plain language of the Federal Death Penalty Act.[2] As noted, the law provides in mandatory terms

---

[2]When interpreting statutes, we begin with the plain language used by the drafters. See <u>Crandon v. United States</u>, 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Furthermore, each part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole. See <u>Administaff Companies, Inc. v. New York Joint Bd., Shirt, & Leisurewear Div.</u>, 337 F.3d 454, 456 (5th Cir. 2003).

7

that the same jury <u>shall</u> be empaneled for both phases of the trial. This language aligns practice under the federal death penalty law with the general practice in capital cases, which are ordinarily tried before a unitary jury. As Williams concedes, constitutional challenges by defendants to unitary capital jury procedures have failed.[3] The procedure prescribed by the statute is both compelling and compelled.

Second, the court's ruling misinterprets the narrow exception to a unitary jury requirement adopted in § 3593(b)(2)(C). The provision states:

> The hearing shall be conducted . . . before a jury empaneled for the purpose of the [sentencing] hearing if . . . the jury that determined the defendant's guilt was discharged for good cause.

The "good cause" language pertains to discharging a jury that has <u>already decided</u> the defendant's guilt. To reach this language, or the scenario contemplated by the statute, a motion would need to be

---

[3]<u>See</u> <u>Gregg v. Georgia</u>, 428 U.S. 153, 158, 160, 96 S. Ct. 2909, 2918-20, 49 L.Ed.2d 859 (1976); <u>see also</u> <u>Spaziano v. Florida</u>, 468 U.S. 447, 464, 104 S. Ct. 3154, 3165, 82 L.Ed.2d 340 (1984) (the Supreme Court is "unwilling to say that there is any one right way for a State to set up its capital sentencing scheme"). Further, using two juries would result in duplicative presentation of evidence, impose burdens on witnesses, and create the potential for inconsistent decisions between the two jury panels. <u>See, e.g.</u>, <u>Lockhart v. McCree</u>, 476 U.S. 162, 181, 106 S. Ct. 1758, 1769, 90 L.Ed.2d 137 (1986) ("[I]t seems obvious to us that in most, if not all, capital cases much of the evidence adduced at the guilt phase of the trial will also have a bearing on the penalty phase; if two different juries were to be required, such testimony would have to be presented twice, once to each jury. . . . repetitive trials could not be consistently fair to the [sovereign] and perhaps not even the accused.").

made following a determination of guilt by the jury after trial. For example, if the jury found the defendant guilty, and then, before the sentencing phase, certain members were disqualified because of their exposure to outside influences, a district court could entertain a motion to discharge the jury and could find "good cause" to grant such a motion. The provision does not allow a pretrial option for a bifurcated jury.

We reject Williams's associated argument that he can or did "waive" the provision for a unitary jury. Williams frames the procedural question as one of "discretion, not an issue of rights . . . ." Where there is no statutory right, however, there can be no waiver. The plain language of the statute confers no right on a defendant to choose a unitary or bifurcated jury, although it does allow him to forgo a jury altogether in the guilt/innocence phase (pursuant to consent by the government and approval of the court under FED. R. CRIM. P. 23), or with the government's agreement in the penalty phase. Id. at § 3593(b)(3). The very existence of such explicit alternatives, together with the narrow circumstances specified for a bifurcated jury, demonstrate that Congress intended to give no option, only commands, with regard to a unitary jury.

Finally, Williams argues that choosing a death penalty-qualified jury would be prejudicial to him were his pending petition for certiorari granted.[4] Williams contends that

---

[4]Williams's pleadings in the trial court also purported to rely on a recent federal district court decision, now on appeal,

9

proceeding in compliance with our mandamus order may result in wasted time and resources if that process is later halted by the Supreme Court. This argument is unavailing. The mandate of the previous order has issued and controls unless the Supreme Court says otherwise. If Williams wished to prevent voir dire from going forward, he could have petitioned the Supreme Court for a stay of trial pending resolution of his certiorari petition. He has not done so.

Alternatively, as the government urged to the district court, the court could have undertaken the selection of a death-qualified jury but delayed swearing in the jury, and triggering jeopardy, until the Supreme Court disposes of the certiorari petition. A grant of certiorari would afford a valid ground for a stay and for the court to decline to swear in the jury. A denial of certiorari, of course, would not affect the continuation of proceedings. Williams's request that the district court judicially amend the Federal Death Penalty Act to resolve this procedural non-problem is unfounded.

---

that authorized a bifurcated jury in a death penalty case. United States v. Green, 343 F. Supp. 2d 23 (D. Mass. 2004), appeal filed, No. 05-1014 (1st Cir., Jan. 27, 2005). The Green court justified its ruling in part on a statistical proffer concerning the probability of exclusion of black jurors in Massachusetts from a death-qualified jury. Williams suggested that, given a chance for discovery, he would make a similar proffer in this case. It is too late. He made his initial motion for a bifurcated jury last October. He has forfeited this claim of error by failing to pursue it further in the district court or in this court.

10

## B. Request to Reassign

In one paragraph of its appellate brief, the government has requested this court to exercise supervisory power to order reassignment of this case. The government cites this court's caselaw concerning the extraordinary remedy of reassignment, but it does not argue explicitly how the standards set forth in the caselaw apply here. For that reason alone, we must deny the government's request at this time. See, e.g., See Fed. R. App. P. 28(a)(9)(A) & (B); Foster v. Townsley, 243 F.3d 210, 212 n.1 (5th Cir. 2001) (issues inadequately briefed are deemed waived); U.S. v. Thames, 214 F.3d 608, 612 n.3 (5th Cir. 2000) (same).

It is imperative to note, however, that the district court's actions in response to the prior mandamus petition could arguably be construed as having thwarted this court's order that the case proceed to trial "within thirty days" of January 12, 2005. Our order was entered in light of two facts. First, 250 citizens have had to fill out onerous death-penalty-jury questionnaires and have been kept at bay, unable to conduct their lives on a normal schedule, pending their being called for this case. Second, the government indicated that many witnesses who are aliens are being detained in this country until the trial occurs. See, e.g., In re United States, 2005 WL 57969, at *10 n.18. Because of these facts, time is more than usually of the essence in completing the trial.

11

We decline to draw the conclusion that the court acted other than in good faith with respect to our order. Nor are we persuaded that the court is unable to exercise impartial judgment as this prosecution continues. Cf. United States v. Andrews, 390 F.3d 840, 851 (5th Cir. 2004) (removing and reassigning to a different judge where the trial judge exhibited "brazen antagonism" to both the controlling law and the defendant himself during sentencing). But these considerations do not change the facts. Consequently, we again insist that the case proceed to jury selection and trial as soon as possible, unless stayed by the United States Supreme Court, with the jury pool prepared for a death penalty case. If the court finds itself unable to comply with this order consistent with the court's docket management plans, we are confident that the court will entertain a motion to reassign the cases in order to move this one expeditiously to trial. The district's court order is VACATED, the stay is LIFTED, and the case is REMANDED for further proceedings not inconsistent with this opinion.