# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51282

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2017

Lyle W. Cayce
Clerk

GREEN VALLEY SPECIAL UTILITY DISTRICT,

Plaintiff–Appellant,

versus

CITY OF CIBOLO, TEXAS,

Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Green Valley Special Utility District ("Green Valley") seeks an injunction, claiming that 7 U.S.C. § 1926(b) prohibits the City of Cibolo from encroaching on its sewer service. Because the district court's interpretation is inconsistent with the statute's plain language, we reverse and remand its dismissal of the complaint.

No. 16-51282

I.

The Public Utility Commission of Texas ("PUC") issues certificates of convenience and necessity ("CCNs"), which give holders the exclusive right to provide water or sewer service within particular service areas.[1]  Green Valley is a special utility district[2] with a service area encompassing parts of Guadalupe, Comal, and Bexar Counties.  Green Valley holds two CCNs: one for water service and one for sewer service.  In 2003, Green Valley obtained a $584,000 loan from the United States to fund its water service.  That loan, which remains outstanding, is secured by Green Valley's water utility revenues.

The city is a municipality located in Guadalupe and Bexar Counties.  In March 2016, it applied for a CCN to provide sewer service to all of Cibolo, including portions within Green Valley's service area.  Granting the application would require the PUC to strip Green Valley of the right to provide sewer service to those areas of Cibolo currently within Green Valley's service area.  The application is for sewer service only; if granted, it would not disturb Green Valley's water service.

Section 1926 is the statute governing the U.S. Department of Agriculture's water and sewer utility loan program.  Green Valley claims that the application violates § 1926(b), which prohibits municipalities from encroaching on services provided by utilities with outstanding loans:

 The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to

---

[1] *See* TEX. WATER CODE § 13.242(a) (setting forth the general requirement that utilities obtain CCNs before providing water or sewer service).

[2] *See id.* § 65.011 (providing for the creation of special utility districts).

2

No. 16-51282

secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

§ 1926(b).

In May 2016, Green Valley sued for injunctive and declaratory relief, alleging that § 1926(b) protects both its sewer and water service from municipal encroachment. The city moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), claiming that § 1926(b)'s protection extends only to services secured by an association's federal loan—in this case, only Green Valley's water service. The district court dismissed though rejecting the city's interpretation of the statute. It found that "§ 1926(b) protects only the service for which the loan was made—the funded service—regardless of what secures the loan." The court gave Green Valley an opportunity to amend its complaint to specify which of its services are funded by federal loan proceeds.

In August 2016, Green Valley filed an amended complaint in which it explained that the federal loan funded only its water service and elaborated on its earlier theories for why § 1926(b) should be interpreted to prohibit municipalities from encroaching on any services made available by federally indebted utilities. The city filed a second motion to dismiss, which the court granted.

II.

This is a tight question of statutory interpretation. Section 1926(b) prohibits the curtailment or limitation of "[t]he service provided or made available through any such association." § 1926(b). Where a CCN imposes a duty on a utility to provide a service, that utility has "provided or made available" that service under § 1926(b),[3] and both sides agree that Green Valley qualifies as

---

[3] *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 915–16 (5th Cir. 1996) (per curiam).

3

an "association." The dispute is over the meaning of "service," which the statute does not define. Green Valley claims that § 1926(b)'s protection extends to any service made available by a federally indebted utility. The district court decided, to the contrary, that § 1926(b) applies only to services that are funded by federal loans. We have never considered a case with these facts, though we have held that § 1926(b) "should be liberally interpreted to protect [federally] indebted rural water associations from municipal encroachment."[4] The only circuit that has considered this issue found that § 1926(b) applies only to "the type of service financed by the qualifying federal loan."[5]

"When interpreting statutes, we begin with the plain language used by the drafters."[6] The plain language of § 1926(b) is dispositive.

The statute refers to "[t]he service provided or made available through any such association." The parties urge us to read "service" in one of the following three ways: (1) as a noun that refers to a combined water-and-sewer service; (2) as a noun that refers to a specific service—either a water service or a sewer service—made available by a federally indebted utility; or (3) as a noun that refers to a specific service made available by a federally indebted utility and financed through the federal loan program. Green Valley favors the first two readings; the city, the district court, and the Eighth Circuit adopt the third. The trouble with the third reading is that the statute does not include any language limiting "service" to those services that have received federal

---

[4] *Id.* at 915.

[5] *See Pub. Water Supply Dist. No. 3 v. City of Lebanon*, 605 F.3d 511, 520 (8th Cir. 2010). The court did not clarify what it meant by "financed," explaining that "we need not decide whether it is the type of service which provides the collateral for the loan or the type of service for which the loan was made that is entitled to protection." *See id.* at 520 n.9.

[6] *United States v. Uvalle-Patricio*, 478 F.3d 699, 703 (5th Cir. 2007) (quoting *United States v. Williams*, 400 F.3d 277, 281 n.2 (5th Cir. 2005)).

No. 16-51282

financing.  The statute refers just to "[t]he service."  *See* § 1926(b).

Under either of the first two readings, Green Valley wins.  If "service" encompasses what Green Valley describes as its "integrated" water-and-sewer service, then § 1926(b) protects its sewer service from municipal encroachment.[7]  If "service" refers to a specific service made available by a federally indebted utility, it must encompass Green Valley's sewer service, which is a "service provided or made available" by a federally indebted utility.

The city claims that Congress's use of the definite article "the" before "service," combined with the use of the singular form of the noun, implies that the statute is referring to a specific service—the service "provided or made available by the federal debt."[8]  We disagree.

The presence of a definite article can affect a statute's meaning.[9]  But, for two reasons, Congress's use of "the" in § 1926(b) is not decisive.  First, it is consistent with "service" referring to an integrated water-and-sewer service. Second, if "service" refers to a specific service, it must be possible to read it as referring to more than one service.  Otherwise, if an association received federal loans for both its water and sewer service, only one of them would be able to receive § 1926(b)'s protection.  If "service" refers to a specific service but can be used iteratively, then both Green Valley's water and sewer service can be examples of "[t]he service made available through any such association."  Thus, the use of "the" in § 1926(b) is consistent with all three readings of "service."

---

[7] Green Valley notes that its water and sewer services share employees, a board of directors, a general manager, and an operating account.

[8] The city's claims track the Eighth Circuit's reasoning in *Public Water Supply*, 605 F.3d at 519–21.

[9] *See, e.g., Brooks v. Zabka*, 168 Colo. 265, 269 (1969) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

No. 16-51282

Congress used both "service" and "services" throughout § 1926. The city claims that if Congress wanted to safeguard all services made available by a federally indebted utility, it would have used "services," not "service," in § 1926(b). But though "each part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole,"[10] it is not evident what conclusions we can draw from Congress's various uses of "service" and "services" in § 1926. The statute uses "service" seven times outside § 1926(b): three times as part of a proper noun,[11] twice as a verb ("service the loan"),[12] once as an apparently countable noun,[13] and once as an apparently uncountable noun.[14] The statute refers to "services" four times, but none of those references is obviously describing water or sewer services: The word is used twice to refer to broadband services,[15] once to refer to "small-scale extension services" for water and sewer projects,[16] and once to refer to "services . . . of local governments and local economic development organizations."[17] None of this sheds much light on the meaning of "service" in § 1926(b).

The city points out that § 1926(b) prohibits "the granting of any private franchise for *similar service* within such area during the term of such loan." § 1926(b) (emphasis added). It urges the court to read that prohibition in

---

[10] *Uvalle-Patricio*, 478 F.3d at 703 (quoting *Williams*, 400 F.3d at 281 n.2).

[11] *See* 7 U.S.C. § 1926(a)(9) ("Public Health Service Act"); *id.* § 1926(a)(13) ("Soil Conservation Service"); *id.* § 1926(a)(22)(A)(ii) ("Rural Utilities Service").

[12] *See id.* § 1926(a)(24)(B)(i); *id.* § 1926(a)(24)(B)(ii).

[13] *See id.* § 1926(a)(20)(E) ("local broadband service").

[14] *See id.* § 1926(a)(4)(B) (defining "project" to "include facilities providing central service or facilities serving individual properties, or both.").

[15] *See id.* § 1926(a)(20)(E) (referring to "common carrier facilities and services" and "affordable broadband services").

[16] *See id.* § 1926(a)(2)(B)(i)(II).

[17] *See id.* § 1926(a)(23)(A).

6

tandem with the prohibition on municipal encroachment on federally indebted utilities' service areas. The city claims that "similar service" should be understood to refer to a similar variety of a specific service—that is, a water service is similar to another water service, and a sewer service is similar to another sewer service—and claims that the "similar service" requirement must apply to municipalities as well as to private entities. But that logic assumes that "service" refers to the federally financed service. If "service" refers to any service made available by a federally indebted utility, then "similar service" refers to any services that are similar to those provided by the utility.

Section 1926(b) has two purposes: "(1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations . . . by protecting them from the expansion of nearby cities and towns."[18]  Green Valley's interpretation is consistent with those purposes. A utility that is protected from municipal encroachment will be able to achieve greater economies of scale, thereby decreasing its per-user costs, and will be less vulnerable to financial disruptions than would a utility that is not protected from municipal encroachment.

It is possible that Congress intended to limit § 1926(b)'s protection to services directly financed by a federal loan. Such a policy would provide federally indebted utilities with substantial benefits while, at the same time, allowing other service providers to compete with federally indebted utilities in the provision of non-federally financed services. But § 1926(b)'s plain language does not limit the statute's protection to services that have received federal financing.

---

[18] *N. Alamo*, 90 F.3d at 915.

No. 16-51282

III.

We decline the city's invitation to read adjectives into § 1926(b).  The judgment of dismissal is REVERSED and REMANDED.[19]

---

[19] Because both of the readings of "service" that Green Valley favors are consistent with the plain language of the statute, we do not decide which one to adopt.