LEE YEAKEL, UNITED STATES DISTRICT JUDGE
Before the court are Plaintiff's Motion for Summary Judgment filed August 15, 2017 (Dkt. No. 19), Defendant Las Colinas' Response filed February 26, 2018 (Dkt. No. 55), Response of Defendants Commissioners of the Public Utility Commission of Texas to Plaintiff's Motion for Summary Judgment filed February 26, 2018 (Dkt. No. 56), and Plaintiff's Reply in Support of Motion for Summary Judgment filed March 5, 2018 (Dkt. No. 61).
I. GENERAL BACKGROUND
Crystal Clear Special Utility District brings this suit against the Commissioners of the Public Utility Commission of Texas ("PUC") in their official capacity and Las Colinas San Marcos Phase I, LLC, alleging that the PUC's decertification of property within Crystal Clear's certificate of convenience and necessity violates 7 U.S.C. § 1926.
Congress enacted Section 1926 to protect a utility that is a recipient of federal *968 loans from curtailment of its service area and encroachment by municipalities in order to ensure that recipients are able to repay their federal loans. N. Alamo Water Supply Corp. v. City of San Juan , 90 F.3d 910, 917 (5th Cir. 1996) (per curiam). The territory that a federally-indebted water association serves is "sacrosanct," Id. at 915, and Section 1926 specifically requires that:
[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan....
7 U.S.C. § 1926(b). Crystal Clear received a federal loan under Section 1926, and its certificate of convenience and necessity granted by the PUC covers about 165 square miles within Hays, Comal, and Guadalupe counties. In September 2016, Las Colinas filed a petition, as allowed under the Water Code, requesting that the PUC decertify 80 acres of property covered by Crystal Clear's certificate of convenience and necessity on property that Las Colinas owns and is developing ("the Disputed Property").[1] TEX. WATER CODE § 13.254(a-5). The Water Code allows for expedited decertification of a property meeting certain requirements when it is "not receiving water or sewer service." Id. In determining whether to decertify property, the Water Code explicitly states that "[t]he utility commission may not deny a petition received under Subsection (a-5) based on the fact that a certificate holder is a borrower under the federal loan program." TEX. WATER CODE § 13.254(a-6). After Las Colinas' decertification petition was filed, Crystal Clear intervened in the proceedings, arguing that the Texas statute was preempted by 7 U.S.C. § 1926 and requesting that the PUC deny Las Colinas' petition. The PUC concluded that it was required to abide by the state law and granted Las Colinas' petition. Crystal Clear then filed an appeal in state court. In addition to appealing the order pursuant to the Texas Administrative Procedure Act, the state suit also seeks declaratory relief based on claims of federal preemption and ultra vires acts by the PUC and seeks a construction of the term "service" in the Texas statute.
Subsequently, Crystal Clear filed this federal suit, arguing that Texas Water Code Sections 13.254(a-5) & (a-6) are preempted by 7 U.S.C. § 1926. It seeks injunctive and declaratory relief to this effect. Crystal Clear now moves for summary judgment on all of its claims.
II. LEGAL STANDARD
Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) ; Celotex Corp. v. Catrett , 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; Washburn v. Harvey , 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.
*969 Matsushita Elec. Indus. Co. v. Zenith Radio , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Washburn , 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. Reeves v. Sanderson Plumbing Prods., Inc. , 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ; Anderson , 477 U.S. at 254-55, 106 S.Ct. 2505.
Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Matsushita , 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus, are insufficient to defeat a motion for summary judgment. Turner v. Baylor Richardson Med. Ctr. , 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. Id. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. Adams v. Travelers Indem. Co. of Conn. , 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. Celotex , 477 U.S. at 322-23, 106 S.Ct. 2548.
III. ANALYSIS
Crystal Clear seeks declaratory and injunctive relief. It asks this court to find (1) that the PUC Order decertifying the Disputed Property from its certificate of convenience and necessity violates 7 U.S.C. § 1926 ; and (2) that Texas Water Code Section 13.254(a-6) is preempted by federal law.
A. Decertification of Crystal Clear's Certificate of Convenience and Necessity
Crystal Clear contends that the PUC's action in decertifying a portion of its certificate of convenience and necessity violated the language of Section 1926. The first step in deciding whether this argument is valid is to determine whether Crystal Clear is a water association entitled to the protections set forth in Section 1926(b). If that is established, the court must then examine whether the PUC's order that removed Las Colinas' property from Crystal Clear's service area violated Section 1926(b).
1. Eligibility for Section 1926 Protections
A rural water association seeking the protections of Section 1926 must establish (1) that it is an association as defined in Section 1926, (2) that the association has an outstanding qualifying federal loan, and (3) that the utility provided or made water service available. See El Oso Water Supply Corp. v. City of Karnes City, Texas , No. SA-10-CA-0819-OLG, 2011 WL 9155609, at *5 (W.D. Tex. Aug. 30, 2011). Here, the parties do not dispute the first element. However, Las Colinas and PUC Officials contend that there is a genuine issue of material fact precluding the entry of summary judgment regarding the latter two elements.
As to the existence of a loan, Crystal Clear has established that it has a continuing indebtedness, as required under Section 1926. Crystal Clear's motion for summary judgment attaches the affidavit of its General Manager stating that it received federal funding on July 22, 2016 for its certificate of convenience and necessity for water service. Notwithstanding the affidavit, Las Colinas and PUC Officials argue that there is a genuine issue of material *970 fact as to whether Crystal Clear is federally indebted. In support, PUC Officials point out that the documents attached to the affidavit are only ancillary documents and that the primary loan agreement is not included. PUC Officials argue that the affidavit and ancillary documents are insufficient evidence to grant summary judgment on this issue. However, PUC Officials do not offer any evidence that contradicts the affidavit of Crystal Clear's General Manager, which clearly states that "[o]n July 22, 2016, the USDA funded a forty-year loan of $3,200,000.00 ... under 7 U.S.C. § 1921 et seq. ," and further confirms that the loan "remains outstanding." Attaching the promissory note to the motion is not necessary to prove that Crystal Clear is indebted to the federal government, and the court concludes that the affidavit and attached documents are sufficient to establish that Crystal Clear is indebted to the government.[2]
PUC Officials and Las Colinas also contend that because Crystal Clear's indebtedness did not begin until 11 days after Las Colinas filed its petition for decertification, the indebtedness is not relevant in the decertification process. Their argument is that Crystal Clear must have been federally indebted at the time the decertification petition was filed. Case law from this district suggests otherwise. One court found that the protections of Section 1926(b) to be applicable to an association that was not federally funded when the city gave notice of its intent to condemn the tract where the association received federal funding prior to the completion of the condemnation proceedings. See El Oso , 2011 WL 9155609, at *7. Specifically, the court relied on the language which precluded curtailment "during the term of such loan ," and found that the relevant date for purposes of Section 1926 protection was the date of the condemnation decision. Id. Because the court did not render its decision until after the association received funding, the association was entitled to Section 1926 protection. Id.
The same is true here. Crystal Clear received funding after the petition for decertification but well before the PUC Officials had rendered the decision on September 28, 2016. Moreover, as in El Oso , there is evidence that Crystal Clear intended to seek federal funding before Las Colinas filed its petition for decertification. Id. (noting that "prior to Karnes City's initiation of its administrative action, El Oso inquired into methods for ... obtaining USDA funding"). For example, Crystal Clear stated that it applied for funding with the USDA in 2012, and that it received authorization from its Board of Directors to pursue the loan on July 15, 2013. Crystal Clear also provided the Board of Directors' resolution to issue bonds (presumably to repay the USDA loan), dated October 27, 2015. Finally, the assurance agreement and non-discrimination agreement with USDA-also presumably related to the loan-are dated May 3, 2016. This evidence, none of which is disputed, shows that the process to receive federal funding was under way well before Las Colinas filed its petition to decertify. Accordingly, Crystal Clear is federally indebted for purposes of Section 1926.
The second issue raised by Las Colinas and PUC Officials relates to the language in Section 1926 referring to the "service *971 provided or made available." The statute does not define this phrase, and the circuits are split on its interpretation. Crystal Clear argues Fifth Circuit case law is clear that "provided or made available" is satisfied if an association has a legal duty to provide service to the property at issue under Texas law, i.e. , it has a certificate of convenience and necessity that includes the relevant parcel. Thus, Crystal Clear argues that because it has a legal duty under its certificate of convenience and necessity to serve the Disputed Property, it has fulfilled the requirement under Section 1926 that it has "provided or made available" its service. Id.
Las Colinas and PUC Officials dispute this, arguing that the question of whether an association has provided or made service available depends on the association's factual ability to serve the area. Under this view, an association must have "pipes in the ground" sufficient to provide the service the property owner desires-ownership of a certificate of convenience and necessity is not enough under the statute. Las Colinas' argues that Crystal Clear effectively rendered service unavailable, because it would cost $1.8 million to provide Las Colinas with water service. This, it claims, is cost-prohibitive and in effect makes service by Crystal Clear to the Disputed Property unavailable.
The court is sympathetic to this argument, as facts in the record indicate that the alarmingly high cost of providing water to Las Colinas-$1.8 million-is largely due to the fact that Crystal Clear would have to install an extensive amount of infrastructure to provide service to the Disputed Property. In fact, Crystal Clear estimated that the infrastructure alone would cost more than $1 million. Nonetheless, Fifth Circuit precedent forecloses the argument that the cost of providing service may be so exorbitant that those services are not 'available' under Section 1926(b). The Fifth Circuit recently held that "[w]here a certificate of convenience and necessity imposes a duty on a utility to provide a service, that utility has 'provided or made available' that service under § 1926." Green Valley Special Utility Dist. v. City of Cibolo , 866 F.3d 339, 341 (5th Cir. 2017) (citing N. Alamo Water Supply Corp. v. City of San Juan , 90 F.3d 910, 915-16 (5th Cir. 1996) (per curiam) ); see also Green Valley Special Utility Dist. v. Walker , 324 F.R.D. 176, 187 (W.D. Tex. 2018) ("The Court finds Fifth Circuit precedent conclusively precludes interpreting § 1926(b) to require a 'pipe in the ground' requirement."). Here, there is no dispute that Crystal Clear possessed a certificate of convenience and necessity covering the Disputed Property or that Crystal Clear is under a legal duty to provide service under Texas law. This is sufficient under binding precedent to show that Crystal Clear has "provided or made available" its service in that area.
The Court notes, however, that the facts of this case highlight a tension in the purposes of Section 1926, which the Fifth Circuit has stated was enacted "(1) to encourage rural water development by expanding the number of potential users of such systems, thereby decreasing the per-user cost, and (2) to safeguard the viability and financial security of such associations (and FmHA's loans) by protecting them from the expansion of nearby cities and towns." N. Alamo , 90 F.3d at 915. On the one hand, the Fifth Circuit, looking to the purposes of the statute, has found that "[t]he service area of a federally indebted water association is sacrosanct" and has interpreted the statute "liberally ... to protect [these] rural water associations from municipal encroachment." Id. Interpreting the phrase "provide or made available" to be synonymous with the association's legal right and duty to serve the area will often further these purposes.
*972 Limiting the protections of Section 1926(b) to apply only to areas where a rural water association already has pipes already in the ground would likely make an association a target of municipal and other water supply systems. For example, developments such as Las Colinas would be inclined to leave the certificate of convenience and necessity of a federally indebted water association and look to a nearby city system (as here, with the City of San Marcos) because the association did not already have "in the ground" every piece of equipment needed to serve a previously undeveloped tract or because a city is able to provide the same service at a cheaper cost. This could have the effect of decreasing the viability and security of an indebted association and potentially decrease the likelihood that it would be able to pay back its federal loan. On the other hand, inflexibly insisting that service is always met where an indebted association obtains a certificate of convenience and necessity may drastically increase, instead of decrease, the cost of providing service to consumers. That difference for the litigants is stark-the City of San Marcos estimated that it could provide service to Las Colinas for $400,000; Crystal Clear estimated that same service would cost Las Colinas more than $1.8 million.
Las Colinas also argues that Green Valley was wrongly decided. Las Colinas supports its argument with decisions from the Fourth and Sixth Circuits and as well as a Texas court of appeals case. See Chesapeake Ranch Water Co. v. Board of Commissioners of Calvert County , 401 F.3d 274 (4th Cir. 2005) ; Le-Ax Water District v. City of Athens , 346 F.3d 701 (6th Cir. 2003) ; Creedmoor-Maha Water Supply Corp. v. Texas Commission on Environmental Quality , 307 S.W.3d 505 (Tex. App.-Austin 2010, pet. denied). Each of these cases applied some variation of the interpretation of "provided or made available" to require "pipes in the ground." However, this court is bound to apply the precedents of the Fifth Circuit and that precedent is clear here. See Green Valley Special Utility Dist. v. Walker , 324 F.R.D. at 187 ("Though other courts of appeals have questioned the wisdom of this interpretation, this court is bound by the holdings of the circuit in which it sits."). Applying the Fifth Circuit's holdings on the issue, Crystal Clear meets the requirement of having "provided or made available" service under Section 1926(b).
2. Curtailment of Crystal Clear's Service Area
Crystal Clear contends that the PUC order granting the decertification petition violated the terms of Section 1926(b) because it has the effect of curtailing the service provided or made available by Crystal Clear. Section 1926(b) is not a model of clear drafting, but it provides that:
The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.
7 U.S.C. § 1926(b). Because "[t]he service area of a federally indebted water association is sacrosanct," encroachment on that area, "be that encroachment in the form of competing franchises, new or additional permit requirements, or similar means" is prohibited. N. Alamo , 90 F.3d at 915. (quoting *973 City of Madison, Miss. v. Bear Creek Water Ass'n Inc. , 816 F.2d 1057, 1060-61 (5th Cir. 1987) ). Courts have construed the protections under Section 1926 liberally to protect federally indebted rural water associations. Id.
Crystal Clear brought this suit alleging that PUC Officials and Las Colinas violated Section 1926 when Las Colinas filed a petition under Section 13.254(a-5) to decertify its property from Crystal Clear's certificate of convenience and necessity, which was granted. Section 13.254(a-5) provides for expedited release from a certificate of convenience and necessity when an "owner of a tract of land that is at least 25 acres ... is not receiving water or sewer service." Crystal Clear argues that the PUC order granting Las Colinas' petition violates Section 1926(b)'s prohibition against the curtailment of the service area of the federally indebted water association. Both Las Colinas and PUC Officials argue that, absent municipal encroachment, state law is not preempted by Section 1926(b). Las Colinas and PUC Officials further argue that Section 1926(b) only protects against the curtailment or limitation of an association's service area "within the boundaries of any municipal corporation or other public body," and the statute does not apply to a case in which a landowner asks to be removed from a certificate of convenience and necessity. First, they state that no court has yet found that a state's decertification of property would violate Section 1926(b). They also point to North Alamo , which in a footnote suggested that an injunction to "control the actions of the Commission ... would create a considerably more difficult federalism question." 90 F.3d at 917 n.27. Thus, they argue, without action taken by a municipality to serve the Disputed Property, no violation of Section 1926(b) has occurred.
The court disagrees. To decide otherwise would ignore the reality of the situation and the effect of decertifying the Disputed Property. Las Colinas and PUC Officials argue that there has been no municipal action and no municipality serves the area. But Las Colinas is not seeking to be removed from Crystal Clear's certificate of convenience and necessity in a vacuum-it seeks to be released from the certificate so that it can obtain services from another provider at a lower price. Another entity providing water service to Las Colinas is undoubtedly curtailing a service that Crystal Clear would otherwise provide. Many courts have found that "it is not necessary that the municipality actually annex or attempt to physically include the disputed territory in order for curtailment to be found." City of Cowan v. City of Winchester , 121 F.Supp.3d 795, 806 (E.D. Tenn. 2015) (citing Adams Cty. Reg. Water Dist. v. Village of Manchester , 226 F.3d 513, 518 (6th Cir. 2000) ). Rather, "[t]here is ... preemption of any local or state law that purports to take away from an indebted rural water association any territory for which the association is entitled to invoke the protection of § 1926(b)." Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester , 358 F.3d 694, 716 (10th Cir. 2004).[3] Thus, the fact that a municipality has not yet moved to incorporate the *974 Disputed Property into its territory does not preclude application of Section 1926. The protections of Section 1926(b) apply to prohibit decertification of the Disputed Property under Section 13.254(a-5) when, as is the case with Crystal Clear, the rural water association is federally indebted and providing or making service available. Further, from the record before the court, it is eminently clear that the reason that Las Colinas sought decertification of its property from Crystal Clear's certificate of convenience and necessity was so that it could then obtain water at a lower price from the City of San Marcos. The record contains an affidavit stating that Las Colinas obtained a cost estimate for water service from the City of San Marcos and stating that San Marcos is the "logical alternative" to Crystal Clear.
In what can only be described as a completely circular argument, PUC Officials also argue that because Crystal Clear's certificate of convenience and necessity no longer includes the Disputed Property, there is no protection available under Section 1926(b) as to the Disputed Property, because Section 1926(b) only protects the association's service area. Of course, the only reason that the PUC Officials can even allege that Crystal Clear's service area does not include the Disputed Property is because the PUC decertified that property in the very proceeding challenged here. If correct, the PUC Officials' argument would allow a state utility commission to decertify the entire service area of a federally indebted water association, and then, separately, to re-permit it to a city water utility and without violating Section 1926(b).
Regardless, the argument also is lacking in authority. The argument relies on a line of cases which hold that the legal duty to provide service is governed by state law. See, e.g. , N. Alamo , 90 F.3d at 916 (finding that a "state law duty to provide service is the legal equivalent to the Utility's 'making service available' under § 1926"). According to PUC Officials, the state may decertify portions of a federally indebted water association's certificate of convenience and necessity without implicating Section 1926. However, this argument fails for several reasons. The protection of Section 1926(b) extends "during the term" of the federal loan. El Oso , 2011 WL 9155609, at *7. Thus, the association's service area-as defined when the water association receives the federal funds-is protected from encroachment. The state's later decertification, then, would violate Section 1926. PUC Officials also point the court to Rural Water System No. 1 v. City of Sioux Center, Iowa , 967 F.Supp. 1483, 1528-29 (N.D. Iowa 1997) to support their argument. In that case, the court was attempting to define the legal duty to provide service. Id. at 1528. Thus, the question at issue was whether the state law definition of the boundaries of the loan holder's duty to provide service, as defined at the time that the association became federally indebted , was preempted by Section 1926. Id. at 1529. There, the court found that the state law definition of an association's service area was not preempted by Section 1926(b) because the protections under the statute do not begin until the "period[ ] when the association is indebted to the United States." Id. Thus, it found that Section 1926(b)"does not prohibit a definition of the service area of an association by state law prior to the association becoming indebted. " Id. (emphasis added). It did not address whether a state may alter an association's service area after it becomes federally indebted. City of Sioux Center is not inconsistent with this court's finding. In fact, the court agrees that the service area, as defined at the time the association becomes federally indebted , is defined by state law.
*975 In sum, the PUC's decertification of the 80 acres owned by Las Colinas from Crystal Clear's service area was a curtailment and limitation prohibited by Section 1926(b).
3. Section 13.254(a-6)
Crystal Clear additionally moves for summary judgment on its claim that Section 13.254(a-6) is preempted by Section 1926(b). The Supremacy Clause of the Constitution "provides a clear rule that federal law 'shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' " Arizona v. United States , 567 U.S. 387, 399, 132 S.Ct. 2492, 183 L.Ed.2d 351 (2012) (quoting U.S. CONST. art. VI, cl. 2 ). There are three types of preemption: express, field, and conflict. Id. The first applies where Congress has enacted a statute with an express preemption provision. Id. Field preemption exists when there is a "framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it' or where there is a 'federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.' " Id. at 399, 132 S.Ct. 2492 (quoting Rice v. Santa Fe Elevator Corp. , 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) ). Conflict preemption, on the other hand, exists when "compliance with both federal and state regulations is a physical impossibility," or in "those instances where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Id. (quoting Florida Lime & Avocado Growers, Inc. v. Paul , 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963) and Hines v. Davidowitz , 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941) ). "In [a] preemption analysis, courts should assume that the historic powers of the States are not superseded unless that was the clear and manifest purpose of Congress." Arizona v. United States , 567 U.S. at 400, 132 S.Ct. 2492 (internal quotations omitted).
Here, Crystal Clear argues that Section 13.254(a-6) is in direct conflict with Section 1926(b). Section 13.254(a-6) provides that: "[t]he utility commission may not deny a petition received under Subsection (a-5) based on the fact that a certificate holder is a borrower under a federal loan program." TEX. WATER CODE § 13.254(a-6). As noted above, (a-5) allows for a landowner to petition for expedited decertification of its property from the current certificate of convenience and necessity holder when, among other requirements, the property "is not receiving water or sewer service." Id. § 13.254(a-5). Section 1926(b), however, protects those entities that are federally indebted from municipal encroachment so long as it has "provided or made available" its service. Because Section 13.254(a-6) prevents the PUC from considering a certificate of convenience and necessity holder's federally indebted status, the PUC is also precluded from applying Section 1926(b)'s protections, in direct conflict with federal law. In a proceeding seeking to decertify a portion of the service area of a federally indebted water supply association, the PUC cannot ignore a certificate of convenience and necessity holder's federal indebtedness and comply with Section 1926(b)'s requirement that the loan holder's "service provided or made available ... not be curtailed or limited" for the duration of the loan. To put it another way, it is "physically impossible" for the PUC to apply both (a-6) and Section 1926(b). Section 13.254(a-6) directly conflicts with Section 1926(b). PUC Officials argue that "[§] 13.254(a-6) would conflict with federal law only in the rare instance when the certificate of convenience and necessity holder subject to decertification *976 is a qualifying federally indebted association under Section 1926 that is not providing service to the tract." But this argument is not meritorious. First, the argument is based on an interpretation of Section 1926(b) that the Fifth Circuit has rejected. Second, the argument that a provision, which directly orders the PUC not to consider a certificate of convenience and necessity-holder's federal indebtedness, solely applies to the rare circumstance in which a certificate of convenience and necessity-holder is federally indebted, is a hollow argument. It applies solely in that circumstance because the legislature worded it that way. Its narrowness or the rarity of circumstances in which it would apply does not affect the preemption analysis.
Moreover, even were the statutes capable of simultaneous application, Section 13.254(a-6) would "stand[ ] as an obstacle to the accomplished execution of the full purposes and objectives of Congress." Arizona , 567 U.S. at 399, 132 S.Ct. 2492. As noted above, Section 1926(b) was intended to (1) increase rural water development in order to decrease user costs, and (2) safeguard the financial viability of the loan holders. N. Alamo , 90 F.3d at 915. The Fifth Circuit has interpreted this statute broadly, in line with these purposes, to find that the legal duty imposed by a certificate of convenience and necessity to serve the area of the certificate of convenience and necessity is equivalent to providing service under Section 1926(b). Id. at 916 ; Green Valley , 866 F.3d at 341. Prohibiting the PUC from considering the federal indebtedness of a water association lessens the protections that Section 1926 is intended to offer in the very proceeding where this protection applies. This is a clear obstacle to the accomplishment of the full purposes of the statute.
In addition to the argument that Section 1926 does not apply absent municipal action, PUC Officials and Las Colinas argue that the statute is saved from preemption because, even though the PUC may not consider an association's federally indebted status, Texas state courts, to which the association may appeal PUC orders, can and do consider this status. Saving the federal question for the judiciary, the Defendants argue, is permissible, and precludes a finding of preemption. Id. In particular, Las Colinas cites to Califano v. Sanders , 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) and Thunder Basin Coal Co. v. Reich , 510 U.S. 200, 215, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) to state that administrative agencies generally are unsuited to consider questions of constitutional law. The same is true, according to Las Colinas, with regard to statutory questions. Shalala v. Ill. Council on Long Term Care, Inc. , 529 U.S. 1, 23, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). The PUC Officials argue that as long as the federal indebtedness is considered in an appeal of a decertification process, the statutory provision prohibiting the PUC from considering the status is not preempted. Las Colinas even goes so far as to argue that requiring the PUC to consider an association's federally indebted status amounts to a "commandeering" of Texas's administrative proceedings.
The argument, though creative, is not in accord with the law, and the cases cited do not support this argument. In each of the above cases, the Supreme Court was determining whether a petitioner had an implied right to seek judicial review of an administrative decision where one was not expressly granted by statute. See Califano , 430 U.S. at 109, 97 S.Ct. 980 ; Thunder Basin , 510 U.S. at 215-16, 114 S.Ct. 771 (finding that the independent commission had previously addressed constitutional questions and that its familiarity of the law precluded the necessity of judicial review); Shalala , 529 U.S. at 23-24, 120 S.Ct. 1084. Here, there is no question that Crystal Clear had the right to judicial review of *977 the PUC's order. Instead, the question presented here is whether state law may preclude an administrative agency from considering a factor that federal law makes extremely relevant to, if not dispositive of, the very question the state agency is deciding. Section 13.254(a-6) is not prohibiting the PUC from considering a statutory preemption argument; it requires the PUC to ignore federal law. The mere fact that Crystal Clear may appeal this to the courts, who, unlike the PUC, are not forced to wear federal law "blinders," does not change the analysis as to whether the statute is preempted.[4]
Finally, the anti-commandeering principle does not apply to this case. The anti-commandeering principle prohibits Congress from "commandeer[ing] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." New York v. United States , 505 U.S. 144, 161, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (quoting Hodel v. Va. Surface Mining & Reclamation Assn., Inc. , 452 U.S. 264, 288, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) ). On the other hand, Congress may "encourage a State to regulate in a particular way, or ... hold out incentives to the States as a method of influencing a State's policy choices." Id. at 166, 112 S.Ct. 2408. One such method is under the Spending Clause, which allows Congress to "attach conditions on the receipt of federal funds." Id. at 167, 112 S.Ct. 2408 (quoting South Dakota v. Dole , 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987) ). Las Colinas does not argue that Section 1926 cannot be upheld under the spending clause. Cf. Pittsburg Cty. Rural Water Dist. No. 7 v. City of McAlester , 358 F.3d 694, 717 (10th Cir. 2004). Rather, it argues that requiring the PUC, as opposed to the judiciary, to consider the question of an association's federally indebted status is "commandeering" the PUC. There is no commandeering at play here; it is a simple case of conflict preemption which requires a state agency to acknowledge-not ignore-federal law.
C. Defendants' Federalism Concerns
Both Las Colinas and PUC Officials maintain that the court should not grant summary judgment on Crystal Clear's claims due to the important state interests implicated by this ruling. The Defendants argue that a ruling in favor of Crystal Clear "would effectively strip Texas of its traditional police-power ability to regulate rural water utilities" by removing its option to release property from the certificate of convenience and necessity of an association that is federally indebted, no matter the circumstances. Las Colinas presents a parade of horribles, including that the PUC would be unable to police an association that is not providing clean drinking water. But nothing in the court's ruling reaches that broadly. The state's power to regulate the health and safety of water supply companies is unchanged by this decision. Rather, the decision only addresses the extent to which a federally indebted water association's service area is protected from encroachment. Here, there is no claim that Crystal Clear has not met its obligations under state law, and the court does not reach that question.
D. Additional Arguments
The Las Colinas and PUC Officials assert several arguments to why this court *978 cannot grant summary judgment on Crystal Clear's claims. First, Las Colinas argues that the relief sought against it is inappropriate. The PUC Officials contend (1) that they are entitled to Eleventh Amendment immunity; (2) that the Anti-Injunction Act bars the relief requested; and (3) that Crystal Clear has failed to show an irreparable injury as required for a permanent injunction.
1. Las Colinas
Las Colinas argues that the court may not grant the declaratory and injunctive relief requested against it for two reasons: (1) Las Colinas, by filing the petition for decertification, did not violate Section 1926 ; and (2) the Noerr-Pennington doctrine bars the relief requested. In the first argument, Las Colinas contends that Section 1926 does not apply to "potential utility customers," but rather to competing utilities and municipalities. Therefore, it argues, the relief requested is not permitted under Section 1926. The court agrees, at least in part, with this argument. Though, as discussed at length above, Section 1926(b) applies to decertification proceedings under Section 13.254(a-5), it does not necessarily follow that injunctive relief against Las Colinas is appropriate. One part of the relief Crystal Clear requests is an order requiring that Las Colinas "refrain from seeking water service for the Disputed Property from any person or entity other than [Crystal Clear] as long as Crystal Clear's federal loan remains outstanding." It is not clear that such an injunction is warranted here, either legally or factually. Indeed, as discussed below, the proper scope of any injunction warranted by the court's finding is a question that will require further briefing and discussion, so arguments regarding whether any such injunction would implicate the Noerr-Pennington or similar doctrines is premature.
2. Eleventh Amendment Immunity
PUC Officials, on the other hand, again argue that they are entitled to immunity under the Eleventh Amendment. This issue was already addressed in this court's order adopting the report and recommendation of the United States Magistrate Judge on February 15, 2018. Dkt. No. 46. As noted there, Eleventh Amendment immunity is subject to the Ex Parte Young exception, which allows suits seeking prospective injunctive relief against state officials in their official capacity; Crystal Clear has asserted a federal right, and is seeking injunctive and declaratory relief that is prospective in nature against the PUC Officials in their official capacities. For the reasons set forth in its prior discussion, this argument is without merit. See Dkt. No. 32 at 3-8; Dkt. No. 46.
3. Anti-Injunction Act
PUC Officials next argue that the relief requested is barred by the Anti-Injunction Act, another argument the court has already addressed and rejected. See Dkt. No. 32 at 8-10 (finding that the relief requested would not require the court to enjoin state court proceedings, and that it therefore did not run afoul of the Anti-Injunction Act), adopted Dkt. No. 46. PUC Officials' sole new argument is that the court's ruling here may conflict with prior decisions of the Austin Court of Appeals. However, a conflict between federal and state courts on a question of federal law does not implicate the Anti-Injunction Act.
4. Irreparable Injury
Finally, PUC Officials argue that Crystal Clear has not shown the elements required to establish a need for an injunction. Specifically, they contend that Crystal Clear has failed to show irreparable injury.
*979 [5] However, the affidavit provided by Crystal Clear states that "[t]he deprivation is irreparable by shrinking its service area," and goes on to state that it "would lose approximately $98,657.12 in annual revenues" as a result of the decertification. In North Alamo , the Fifth Circuit noted that "an injunction has been the principal tool employed by the courts with which to enforce the statute and prevent violations." 90 F.3d at 917. It went on to uphold the injunction on the basis that: (1) the utility was federally indebted, (2) the city had encroached on the disputed area, and (3) the utility would lose significant annual revenues as a result. Id. Crystal Clear has shown that it is entitled to the protections of Section 1926, that the decertification violated Section 1926, and that it would lose annual revenues as a result of the decertification, which would make it difficult to repay its federal loan. As such, Crystal Clear has shown an irreparable injury.
E. CONCLUSION
IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment filed August 15, 2017 (Dkt. No. 19) is GRANTED IN PART as to the following claims: (1) Crystal Clear is federally indebted under Section 1926 ; (2) Crystal Clear has "provided or made available" service under Section 1926 by virtue of its legal duty to provide service as defined by its certificate of convenience and necessity; (3) PUC Official's order granting the petition to decertify the Disputed Property from Crystal Clear's certificate of convenience and necessity curtailed Crystal Clear's rights under Section 1926 ; and (4) Section 13.254(a-6) is preempted by Section 1926. In all other respects the motion is DENIED.
Having granted Crystal Clear's motion for summary judgment, the court believes that additional briefing is necessary to determine the proper scope of declaratory and injunctive relief. Accordingly,
IT IS FURTHER ORDERED that all future motions related to the scope of relief sought by Crystal Clear are REFERRED to United States Magistrate Judge Andrew Austin for resolution or recommendation as appropriate. See 28 U.S.C. § 636(b)(1)(A), (B) ; Fed. R. Civ. P. 72 ; Loc. R. W.D. Tex. App. C, R. 1(c), (d).

Unless otherwise indicated, all citations to the applicable Texas Water Code provisions will be limited to the relevant section number, i.e. "Section 13.254(a-5)."

Having said this, Crystal Clear's failure to submit a copy of the loan document is odd, particularly in light of the number of other documents it submitted related to the indebtedness. It leaves one to wonder if Crystal Clear cannot find its loan document. This, however, is not the question at the summary judgment stage. The question is whether there is a dispute as to the material fact of Crystal Clear being indebted at the relevant times, and there is no dispute as to that fact.

In a case before the Missouri Court of Appeals, the court applied Section 1926 in detachment proceedings. See Robertson Props., Inc. v. Detachment of Territory from Pub. Water Supply Dist. No. 8 , 153 S.W.3d 320, 324-25 (Mo. Ct. App. 2005) ("If the federal statute [Section 1926 ] applies, there is no need to determine whether state law has been met, for the federal law, via a Section 1926 defense, has preempted a detachment under Section 247.031."). Though that case ultimately found that the water district was not providing or making service available-using the Eighth Circuit definition of that phrase-it is noteworthy that the court found that Section 1926 applied as an affirmative defense to the detachment proceedings, even without direct municipal involvement. Id.

The argument advanced by Defendants is also highly impractical. Section 13.254(a-6) states that the PUC may not consider a certificate of convenience and necessity holder's indebtedness when determining whether to decertify. However, because it may be considered on appeal, rural water utilities would have to appeal every PUC decertification order before the supreme federal law could be applied to the case.

PUC Officials also argue that Crystal Clear has not shown a federal right, as required for Ex Parte Young to apply. However, this is incorrect. The entire case is premised on whether 7 U.S.C. § 1926 preempts the actions taken by the PUC.